26 C.C.P.A.(Patents)

## In re WAGNER.
### Patent Appeal No. 4131.

Court of Customs and Patent Appeals.
May 1, 1939.

Edward H. Lang, of Chicago, Ill. (Henry C. Parker, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C., (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office which affirmed the decision of the examiner rejecting, in view of the prior art, all of the claims of an application for a patent for alleged new and useful improvements in polymerization of olefine-containing hydrocarbon gases. Appeal has been taken here from the decision rejecting claims 16 to 18 inclusive.

The references relied upon are: Youker, 1,800,586, April 14, 1931; Frey et al., 1,847,238, March 1, 1932.

The tribunals below listed a patent to Weaver as a reference, but as the examiner appears to have made use of this patent only in connection with claim 10, the rejection of which was not appealed to this court, the said patent need not be given consideration.

Claim 16 is illustrative of the subject matter of the appealed claims and reads: "16. The method of polymerizing olefine-containing hydrocarbon gases which comprises heating said gases in a heating zone, subjecting the heated gases in a reaction zone to elevated temperatures and to super-atmospheric pressures suitable for converting said gases to hydrocarbons boiling within the gasoline range, maintaining the reacting gases within the desired conversion temperature range by injecting into the reacting gases, cooler gases of substantially the same olefinic content as the gases subjected to the heating step, cooling the products leaving the reaction zone, while under super-atmospheric pressure, sufficiently to condense the normally liquid hydrocarbons together with propylene and butylene, separating uncondensed gases from the liquid reaction product, then separating propylene and butylene from the condensed product, and recycling the propylene and butylene to the reaction zone."

The application relates to a method of polymerizing olefine-containing hydrocarbon gases and the method is made sufficiently clear from the steps enumerated in appellant's brief of claim 16 as follows:

"1. Heating olefin-containing hydrocarbon gases in a heating zone.

"2. Subjecting the heated gases in the reaction zone to elevated temperature and super-atmospheric pressure suitable for converting gases to gasoline boiling hydrocarbons.

"3. Injecting into the reaction gases cooler gases of substantially the same olefinic content as the gases subjected to the heating step in order to maintain the reacting gases at desired temperature.

"4. Cooling the reaction products while under super-atmospheric pressure sufficiently to condense propylene and butylene with normally liquid hydrocarbons.

"5. Separating uncondensed gases from the liquid product.

"6. Separating propylene and butylene from the liquid product.

"7. Recycling propylene and butylene through the reaction zone."

Claim 17 and 18 depend on and add to claim 16 in the following manner set out by appellant:

"Claim 17 depends on Claim 16 and recites the reaction range of 1200°–1400°F.

"Claim 18 adds to Claim 16 the step of admixing the recycled propylene-butylene fraction with the fresh gas and charging a portion of the mixture through the heating zone to the reaction zone and another portion directly to the reaction zone."

"The patent to Youker relates to the conversion of highly volatile hydrocarbon natural gas into comparatively less volatile hydrocarbon liquids. The process discloses the heating of said natural gas which enters into the top of a vertical cylindrical closed vessel from the bottom of which the converted gas passes through a condenser worm into another closed cylindrical vessel from which the gas remaining uncondensed is drawn off and the liquid passes into a fractionating column. From the bottom of the fractionating column gasoline is withdrawn and certain gases pass through the top of the said column in a recycling operation in which said gas is directed into the pipe which supplies the natural gas in the beginning of the process.

The patent to Frey et al., relates to a process of treating hydrocarbons in which gases, including propylene, butylene and mixtures of the same are heated in a heating zone for the purpose of cracking them in an exothermic chamber where the temperature may be 1,250°F. to 1,750°F. under pressure which may be atmospheric or a little above atmospheric. The patent states "it is clear that the process may be carried out at higher pressures." A cooling diluent may pass into the pipe which conveys the heated gas from the heater into the exothermic cracking chamber. The specification states: "For this purpose, gas to be cracked, gas resulting from cracking, fuel gas, and the like, may be used."

Several other patents appear in the record, but they need not be considered as they have not been cited by either the examiner or the board as references.

The examiner rejected claim 16 as not patentable over the Frey et al., patent in view of the fractionating process shown to be old in the Youker patent.

Claim 17 was rejected by the examiner for the reason that the specific temperature range in the claim was not shown to be a distinction over the disclosure in the patent to Frey et al. The examiner rejected claim 18 on the ground that the added limitations therein would not constitute a patentable distinction over the cited references.

In affirming the decision of the examiner the Board of Appeals referred chiefly to the Frey et al., patent. In response to a request for reconsideration of its decision, the board held that the recycling of a product through a system of operation is old and well known and that this recycling of the product is disclosed in the patent to Frey et al., as well as in the Youker patent.

As to claim 17, the temperature range of 1200° to 1400°F. is clearly disclosed in the patent to Frey et al., where suitable temperature is disclosed as being between 1,250° and 1,750°F. Therefore, in our opinion, claim 17 was properly rejected.

The limitation in claim 18 as to mixing and recycling with the original gas, it will be noted, is shown in the patent to Youker where the recycled gas is mixed with the incoming gas. This claim was likewise properly rejected.

There can be no question but that the first step of claim 16, as above set out, is met by the Frey et al., patent. As to the second step the patent to Frey et al., distinctly sets out that super-atmospheric pressure can be used. The rejected claims show no specific pressure so that the disclosure in the said patent that the process may be carried out "at a pressure of only a little above atmospheric," sets out a super-atmospheric pressure. The Frey et al., patent also specifies that "it is clear that the process may be carried out at higher pressures." Therefore, step three is amply met by the said reference. For the reason that the patent to Frey et al., clearly discloses the intake of cooling diluent gases, which are definitely stated to be "gas to be cracked, *gas resulting from cracking,* fuel gas, and the like," (Italics supplied) it is our opinion that the third step shown in claim 16 is anticipated by the said patent.

While it is quite true, as contended by appellant, that when olefine gas is used in the process of Frey et al., it is "necessary to add heating gas (combustion gases) instead of cooling gas," nevertheless, the disclosure in this patent is that the gases are "too cool sometimes * * *." This indicates to us, as is urged in the brief of the Solicitor that the gases are not always too cool and that "obviously if they are too hot they have to be cooled." The device shown in the patent has a pipe for cooling gases as well as one for heating gases. Furthermore, since the said patent states: "The amount of diluent gas would need to be great enough to prevent excessive temperature rise," it is obvious that nothing new has been presented by appellant in the said use of a cooling gas.

As to the said fourth step, it has hereinbefore been shown that the process of the patent to Frey et al., discloses the operation under super-atmospheric pressure and the cooling diluent gas to control the extent of cracking.

Steps five, six and seven, it is apparent, disclose nothing new over what is shown in both references, particularly in the fractionating and recycling disclosure of Youker.

Even though it may be that the patent to Youker is inoperative as contended by appellant for the alleged reason that from the temperatures and pressures named it is impossible to convert natural gas into gasoline, this patent was relied upon only for the fractionating and recycling steps. These steps are definitely disclosed in the patent and we are of opinion that whether or not the patent is inoperable in some other features as to which it was not relied upon as a reference, is a matter of no concern.

Even though the Youker patent does not recycle propylene and butylene, this does not render it unavailing as a reference as contended by appellant. The fact that the patent clearly discloses recycling of a desired component of what has been produced is sufficient to warrant its use as a reference.

The reasoning of this court in the case of In re Foster, 86 F.2d 981, 983, 24 C.C.P.A., Patents, 794, 796, 798, cited in the brief of the Solicitor is applicable to this contention:

"It is conceded that no prior art was cited showing a refluxing step with respect to the purification of phthalic anhydride, but it was held in effect that, since it was old and well known in the chemical art to use such step for purifying other substances, appellant's utilization of it in this particular field did not constitute invention.

   *    *    *    *    *    *    *

"It seems to us to be a matter of skill rather than a matter of invention. Appellant has merely applied a process, or a step of a process, well known in the chemical art, to a different chemical which, in our opinion, did not involve invention. In re Dreyfus, 65 F.2d 472, 20 C.C.P.A., Patents, 1204."

The board held that "The recycling of a product to be again passed through the system for further operation is old and well known." This appears to us to be a proper holding.

We have considered other contentions made by appellant which we think are of minor importance, and unnecessary to discuss herein. The brief and authorities cited have received careful consideration, but we are unable to perceive error in the decision appealed from. Accordingly the decision of the Board of Appeals rejecting claims 16 to 18 inclusive is affirmed.

Affirmed.