Modified.

28 C.C.P.A. (Patents)

**In re DOWTY.**

**Patent Appeal No. 4417.**

Court of Customs and Patent Appeals.
March 31, 1941.

364

Lacey & Lacey, of Washington, D. C. (Allen E. Peck and John S. Lacey, both of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner denying patentability, in view of the prior art, of claims 12, 14, 17, 19, 20 and 30 of an application for a patent for undercarriages for aircraft.

Seven claims of the application were allowed by the examiner who held that appellant's invention is in a hydraulic jack equipment as disclosed in the allowed claims and not as covered by the rejected claims.

Claims 12, 17 and 30 are illustrative and read as follows:

"12. A retractable aircraft undercarriage comprising an undercarriage structure adapted for retraction, a hydraulic jack adapted to retract and extend said structure, a first source of fluid pressure to operate said jack for extending the structure ordinarily, a valved connection between said source and said jack for controlling fluid flow to the jack, a pressure reservoir constituting a second source of fluid pressure independent of the first source and a valved connection between said second source, and said jack for controlling fluid flow to the jack upon failure of the first source."

"17. In combination with a retractable undercarriage for aircraft having ordinary means for extension including a first source of energy and transmission means therefrom to the point to which extending power is to be applied, auxiliary means for emergency extension comprising a second source of energy and second transmission means between said second source and said point, said second source and second means being separate from and operatively independent of said first source and first means."

"30. A retractable aircraft undercarriage comprising an undercarriage structure adapted for retraction, a hydraulic jack adapted to retract and extend said structure, two separate sources of fluid pressure each separately connectable to said jack for extending said structure, and common controllable means for selectively effecting such connection."

The following patents were cited as prior art: Lewis, 1,291,566, January 14, 1919; Martin, 1,526,674, February 17, 1925; Weymouth et al., 2,014,793, September 17, 1935; Zouck, 2,017,086, October 15, 1935; Hathorn, 2,025,743, December 31, 1935.

A clear description of the device of appellant and its claimed novelty appears in the examiner's statement, as follows: "The applicant's device relates generally to a landing gear for an aircraft. More particularly it relates to a landing gear of the retractable type having wheels for engagement with the ground or other landing surface and a mechanism for supporting the wheels which is also constructed to lift the wheels up into retracted position within the body of an aircraft during flight for the purpose of reducing air resistance or 'drag' which otherwise would be caused by the wheels and struts in the extended position. * * * The alleged novelty is supposed to be in the addition to the undisclosed normal operating system of an emergency means for extending the wheel in case of failure of the undisclosed normal power means to operate."

The emergency operating means is shown in two embodiments. In one form, a spring and cable device, there is provided a releasable spring held in compressed form (the source of the energy) and adapted to extend the undercarriage upon release. The spring is held in compression by a readily releasable catch and there is a connection between the spring and the

moving parts of the undercarriage whereby extension of the spring upon release urges the undercarriage toward complete extension. The connection is preferably a cable and in such case there may be a relatively light additional spring to keep the cable under initial tension. In the other form is shown a fluid pressure emergency extension means applied to a double-acting hydraulic landing gear retracting mechanism. In this embodiment there is provided a source of energy in the form of a pressure reservoir for compressed air. The reservoir is the internal hollow space within the stem of a hydraulic jack and there is a valve arrangement operated by a single readily moveable member for cutting off from the jack the source of pressure which is ordinarily in use for undercarriage extension, and connecting the pressure reservoir to the jack.

Claims 12, 14, 19 and 20 were rejected by the examiner for want of patentability over the patent to Hathorn in view of the patent to Zouck. He rejected claim 17 as being fully met by either one of the patents to Martin or Weymouth et al., and he rejected claim 30 as not presenting invention over the patent to Hathorn in view of either the Zouck or Lewis patents.

While the Board of Appeals did not separately discuss the rejected claims, it apparently agreed with the grounds of rejection by the examiner and stated in its decision as follows: "While the claims are not directly anticipated by the prior art so much is shown by the references that we regard the claims as covering a field clearly suggested to any mechanic."

The patent to Martin was relied upon by the examiner solely for the teaching that it is old to use one of two separate means for the operation of a retractable landing gear (a float or pontoon of a seaplane) in case of the failure of the other to operate. The patent to Weymouth et al. was cited for its teaching of the use of two separate means in operating a retractable landing gear of the wheel type. The Hathorn patent was relied upon to show prior art in operating a retractable landing gear by means of a double-acting hydraulic jack. The patent to Zouck was relied upon to show that it is old to use two sources of fluid pressure such as steam and air controlled by a shuttle valve for the operation of a fluid pressure jack. This valve device of the patent, which is double acting, is part of a servo motor for operating power

reverse gear in a locomotive. The patent to Lewis relates to a valve structure for controlling the supply of a plurality of different fluid pressures to the power cylinder of a pressure operated apparatus, for shifting the valve gears of a railway locomotive, but not restricted to this use. This patent was cited for its disclosure of a "common controllable" valve for selectively effecting a connection from a supply of compressed air or from a source of steam for actuating a hydraulic motor.

Appellant does not contend that the cited patents do not disclose and teach as was stated by the examiner. His contention is that the claims on appeal are patentable over all of the separate disclosures of the prior art and over any combination of the cited references.

The only claim here which appears to be intended to include the first form of the apparatus shown in the involved application is claim 17. The examiner held that this claim is fully met by either of the patents to Martin or Weymouth et al. In our opinion this holding is proper. In its essence the claim merely provides for two independent means for the operation of a retractable landing gear on an aircraft. The patent to Martin clearly discloses these limitations. It shows a tank as one source of fluid pressure and an air scoop as another source. Each operates independently of the other. Weymouth et al. discloses a combination comprising a retractable undercarriage of an aircraft with ordinary means for extending the undercarriage, including as a first source of energy a battery and a motor and transmission means therefrom to the place in the apparatus where the extending power is applied and auxiliary manual means comprising a second source of energy. The electric motor and the hand crank are separate and independent means for operating the landing gear. Claim 17 defines no more structure than is disclosed in these references.

It is stated by the examiner that claim 30 was drawn to avoid the Zouck reference. The examiner held, however, that the claim as drawn still is anticipated by the patent to Zouck, in that the patent discloses a shuttle valve which is actuated from one side to another whenever Zouck directs either air from the air reservoir, one source of power, or steam from the boiler, another power source, to the power cylinder. This shuttle valve in our opinion constitutes a "common controllable

means" for selectively effecting the two separate sources of fluid pressure. The examiner also rejected the claim as not presenting invention over the Hathorn patent in view of either the patent to Zouck or the Lewis patent. It is not necessary to discuss the latter patent since we are convinced that the Zouck patent anticipates the limitation discussed in this paragraph.

The Hathorn patent discloses a hydraulic jack used for extending and retracting the landing gear of an aircraft. Zouck not only discloses the means treated in the former paragraph but also "two separate sources of fluid pressure." Therefore, if it did involve invention to substitute the fluid pressure system of Zouck for that of Hathorn, claim 30 as well as claims 12, 14, 19 and 20 should have been allowed.

Appellant does not claim to have invented the combination of a hydraulic jack and the undercarriage of an aircraft. In his specification he states: "Turning now to Figures 3 and 4, in this case there is not represented a complete undercarriage, but only a hydraulic jack of a kind commonly incorporated in undercarriages or in association with undercarriages for the purpose of retracting and extending them in accordance with the direction of flow of liquid in a two-pipe line hydraulic system operating from a suitable pressure source."

He then describes his particular kind of jack, which is different from the ordinary hydraulic jack. This difference appears to reside in providing for one source of fluid pressure within the jack and another, the application does not show where, outside of the jack. We do not see any novel co-operation between the jack of appellant and the landing gear. Hathorn's jack apparently can extend and retract the undercarriage in the same co-operative manner. It is true that Hathorn does not disclose a source of fluid pressure, but we believe that this is unimportant. Hathorn discloses a fluid pressure pump. The fluid would have to be provided in order that the pump could function. It would, in our opinion, be perfectly obvious to supply such fluid in a tank, as in the patent of Martin.

We are also of opinion that any skilled mechanic, if it were desirable to utilize in the structure of Hathorn the system of the Zouck mechanism, wherein two separate and distinct sources of fluid pressure are controlled by a shuttle valve, would, without the exercise of invention, substitute the pressure system of Zouck for that of Hathorn.

Appellant in his brief contends that the patents to Zouck and to Lewis are from the nonanalogous art of locomotive reverse gears. These patents, however, were cited only for disclosures relative to fluid pressure motors and the control thereof. As was pointed out in the brief of the Solicitor of the Patent Office, if a worker skilled in the art observed defects in the Hathorn fluid pressure motor in its control means, and desired to make an improvement therein, he would look for assistance in the art of pressure motors. Reference to the official classification of this patent shows it to have been classified in Class 121 which in the official Manual of Classification of Patents is a class of "Motors—Expansible Chamber Type."

Appellant urges that the Martin patent embodies a definitely incomplete disclosure and that it is practically inoperative and has been so adjudged in a United States District Court, and that therefore could have taught the art nothing and is of no value as a reference. While probably it may have been as defective as appellant claims, nevertheless we do not see that the exercise of mechanical skill would not cure the defects. As to whether or not a patent alleged to disclose an inoperative apparatus constitutes a valid reference, we had the following to say in Re Kehl, 101 F.2d 193, 195, 26 C.C.P.A., Patents, 794, 797: "Much of appellant's brief is devoted to argument upon the question of the alleged inoperativeness of the Trost device, and numerous authorities are cited in support of the contention that an inoperative prior art device may not be relied upon as an anticipation. That this is a general rule may be conceded, but it is also quite well settled that an inoperative device may be a valid reference if the defect may be cured merely by mechanical skill not requiring invention [citing authorities]."

This language of the court seems particularly applicable here with reference to the Martin patent, and the said patent, therefore, constitutes a valid reference.

We have no doubt but that pre-stored energy, as shown by appellant, and quick-acting means for instantly releasing it, are of much practical advantage in the operation of retractable landing gear for

aircraft. However, we are convinced that the invention of the appellant is in his hydraulic jack equipment, as was held by the examiner, and not as claimed in the rejected claims. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.