36 C.C.P.A. (Patents)

Application of SHEPHERD.

Patent Appeal No. 5503.

United States Court of Customs and Patent Appeals.

Jan. 5, 1949.

Rehearing Denied Feb. 25, 1949.

Patent Office affirming the action of the Primary Examiner in rejecting as unpatentable over the prior art of record thirteen claims in appellant's application for a patent relating to a sound recording and reproducing system. Twenty-two claims, including claims for apparatus and claims for method, were allowed.

The references are:

Steiger, 1,350,246, Aug. 17, 1920.
Croll, (Br.) 276,708, Sept. 1, 1927.
Filograph Co. (Fr.), 633,624, Oct. 25, 1927.
Snook, 1,681,376, Aug. 21, 1928.
Zworykin, 1,802,747, April 28, 1931.
Zaddach (Br.), 384,258, Of 1932.
Land et al., 1,918,848, July 18, 1933.
Symonds, 1,946,596, Feb. 13, 1934.
Lohn, 2,188,687, Jan. 30, 1940.
Land, 2,256,093, Sept. 16, 1941.
Ryan, 2,263,316, Nov. 18, 1941.

On the basis of the subsequent discovery of the British patent to Zaddach, the Primary Examiner revised his original statement and in a second and final statement rejected claims 18, 19, 21, 23, 24, 32, 39, 40, 44, 45, 50, and 54 as fully met by the disclosure of the patent to Zaddach, and claim 35 on the disclosure of Zaddach in view of Snook.

The Board of Appeals reversed the action of the examiner as to certain claims which are not here in issue and allowed the same. However, the grounds upon which the examiner rejected the appealed claims were in effect all affirmed by the board, which also applied a new and further ground of rejection as to claims 32, 35, 39, 41, 45, and 54, as well as claim 40. Upon a petition for reconsideration the board took the opportunity to amplify its original decision but refused to make any change therein with respect to the claims in which it affirmed the examiner's decision.

The board treated the claims in three groups. Group I contains those directed to the record and the manner of recording on the record, and includes claims 18, 19, 21, 23, 24, 44, and 50; group II is directed to the reproduction of the record; and group III to the combination of recording and reproducing. Group II contains ap-

Judson O'D. Shepherd, pro se.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States

pealed claims 32, 35, 39, 45, and 54, while group III here contains only the rejected claim 40.

Claims 19, 32, and 40 are considered sufficiently illustrative. They read:

"19. A record from which signals can be produced by a scanning beam of polarized light consisting of a filament of light transmitting, optically active material of normally round section bearing signal undulations of such character as to impart rotative modulations to rays of a scanning beam of polarized light."

"32. The method of reproducing signals from a medium of light transmitting material bearing a signal record of light refractive undulations which comprises scanning the record with a beam of light which is refractively modulated by the undulations of the record, converting the refractively modulated beam into an intensity modulated beam having a varying area and translating the intensity modulated beam into signals."

"40. The method of recording and reproducing signals employing a light transmitting medium capable of retaining strains which consists in moving the medium at substantially uniform speed while placing strains in the medium in response to signals, subsequently passing the medium through polarized light which the strain record modulates in accordance with the recorded signals and translating the resulting modulated light into signals corresponding to those recorded."

Appellant's invention and the theory of its operation was described in the examiner's original statement and quoted by the board as follows:

"Applicant's invention relates to a sound recording and reproducing system.

"As shown in Figure 1 applicant, by means of a conventional recording head 30 (specification Page 6, last paragraph), electro-mechanically deforms a filament 1 of an optically active material in accordance with the sounds to be recorded. The material is stated in the specification to be preferably Cellophane. Therefore, as the blade of the recording head 30 oscillates, and the filament 1 passes thereunder as it is being wound from spool 2 to spool 16,

the filament will be deformed in accordance with the sound to be recorded.

"For reproduction, the filament is rewound to the starting spool and thereafter the filiment [sic] is moved again in the same direction as it traveled during the recording operation.

"The reproducing system comprises a light source 34 from which the light travels through a polarizing plate 35, a slit 36, through the filament 1, then through another polarizing plate so oriented as to cut off substantially all of the light emanating from the first slit when the filament is undeformed, then through a record slit 39, and thence finally to a photocell 40 in an amplifier circuit.

"Due to the inherent light rotative characteristic of the substance used in the filament, and due to the fact that varying amounts of deformation will cause corresponding amounts of rotation of the line of light formed by slit 36, a varying amount of light will fall upon the photocell 40 through slit 39 as the line of light from slit 36 is rotated more or less into coincidence with slit 39. The light falling on the photocell 40 will operate the amplifier and speaker system to reproduce the recorded sound."

Appellant contends here that the tribunals of the Patent Office misconstrued the principles involved in his invention and improperly applied the disclosures of the cited references in the rejection of the appealed claims.

The patent to Steiger relates to improvements in sound recorders and reproducers in which a record is made upon a structureless thread, illustrated in the drawings. A chisel edged recording pin or member by its pressure produces in the surface of the thread irregularities corresponding to the vibrations of the recording member. The sounds thus recorded on the thread are reproduced in the manner described in the specification.

The British patent to Croll is the alleged duplicate of the French Filograph patent and is similar to the patent to Steiger hereinbefore described. The invention consists in recording sound, by electrical means on a structureless thread, moulded or pressed

of cellulose, and of a round, flat, or other section.

The patent to Snook is also for sound recording and reproduction. A sound record is made upon a strip which may consist of celluloid. The strip carrying the photographic record of sound is utilized for reproduction with the aid of monochromatic light passing through a narrow slit to the photoelectric cell.

The patent to Zworykin relates to a system for recording electrical fluctuations, particularly wherein such fluctuations are photographically recorded upon a light-sensitive, moving film. A sound record is made on a film for use in the conventional sound reproducer. As shown in the drawings, a microphone is used to rotate the polarized light.

The patent to Lohn relates to method and apparatus for recording and reproducing sound. A celluloid tape or film is employed to make a record, and, as shown in the drawings, is passed under a cutting head which cuts the surface of the tape in accordance with the incoming signals. So far as pertinent, the disclosure of the instant reference is thus briefly described by the Solicitor for the Patent Office:

" * * * a celluloid record upon which the recording is made by cutting, the angles of the cut producing refractions which are sened [sic] by the customary light and photocell arrangement to reproduce sound."

The patent to Land No. 2,256,093, relates to material having birefringence and to the method of its manufacture. The specification discloses that certain cellulose materials are suitable for use in the preparation of the birefringent element or characteristics, and that these characteristics may be altered or varied by deforming the materials.

The patent to Land et al., No. 1,918,848, relates to polarizing refracting bodies. An extruded collodial mass, after the application of force to its sides, is then allowed to become set by drying so that the resultant body is relatively hard and permanently has the property of polarizing light.

The patent to Symonds relates to phonograph records and one of the objects of the invention is to produce such a record with sound grooves thereon. Among the materials adapted for the purpose are films of cellulose acetate, celluloid and regenerated cellulose, such for instance, as "cellophane."

The patent to Ryan relates to sound track in lightpolarizing film, and specifies Cellophane as one of the preferred examples of the materials suitable for use. Reproducing means are so coupled with photoelectric means that variations of the intensity of light incident on the latter will be converted into sound. In other words, the photoelectric reproduction of the sound track is effected by utilizing the polarization properties of the material.

The British application for a patent to Zaddach, the principal reference, relates to improvements in sound recording and reproducing means and more particularly to means for electrically recording and reproducing any kind of varying and transient acoustic, optical or electrical occurrences or oscillations. Its pertinent disclosure was described and discussed at length not only by the examiner but also by the Board of Appeals. The disclosure of the reference, as correctly described in appellant's brief, reads as follows:

"Zaddach Br. 384,258 of 1931, is a voided British patent specification and therefore merely a foreign publication in the present proceeding. It alleges the recording of sound on a medium of melted material by subjecting it to a potential varied in accordance with sound signals. This medium is subsequently hardened in a chilling chamber. Reproduction is stated to be effected by an electrostatic pick-up allegedly responsive to varying electrical polarity of molecules or particles in the medium. It is further alleged that such a record also has a varying birefringence which may also be detected."

Appellant argues that the device disclosed by Zaddach is inoperative and for that reason is invalid as a reference. The board held that the involved disclosure was insufficient as an optical reproducing device, but fully operative as to the making of the record.

A foreign publication is a valid reference for what is clearly disclosed

therein under the ruling of this court in the case of In re Cross, 62 F.2d 182, 20 C. C.P.A., Patents, 710. It is equally well established that while a disclosure may be inoperative and invalid as a reference as to one of its features, its effectiveness as a reference is not thereby removed as to other features which are clearly operative. See In re Wagner, 103 F.2d 414, 26 C.C.P. A., Patents, 1193. See also In re Dowty, 118 F.2d 363, 28 C.C.P.A., Patents, 1016. Moreover, claims to be patentable must distinguish from the references even if the disclosures in the references are inoperative. In re Crecelius, 86 F.2d 399, 24 C.C. P.A., Patents, 718.

All seven claims in Group I were rejected in the examiner's second statement on the ground that they were fully met by the disclosure of Zaddach. Of Group II, claims 32 and 54 were rejected on the patent to Lohn, and claim 35 upon the patent to Lohn in view of the patent to Snook. The board in effect affirmed all of the grounds of rejection hereinbefore enumerated, and further rejected appealed claims 32, 35, 39, 45, and 54 on the ground that they did not patentably distinguish from the disclosure of the patent to either Ryan or Lohn, and that claim 40 was unpatentable over those two references in view of the British patent to Croll No. 276,708.

■ The faculty of invention has been demonstrated in this case, as evidenced by the twenty-two allowed claims. The Solicitor for the Patent Office takes the position, however, that the rejected claims are in nowise patentable over the disclosures of the references cited against those claims. Referring to the description in appellant's brief, the solicitor states that, in accordance with such description, the essence of appellant's invention is:

"In brief, a tool driven in response to sound waves varies the birefringence of a record filament, preferably of Cellophane, in accordance with the sound waves. The record so produced is utilized to control the light falling on a photocell and thereby operate a conventional sound reproducing system."

The solicitor further urges that while none of the claims in Group I, which involves the record or recording, includes the word "Cellophane," nevertheless, on the basis of appellant's own disclosure, as hereinbefore set forth, it is apparent that those rejected claims depend for patentability on the simple fact that appellant records on a thread of Cellophane with a conventional cutting head; and that the point here in issue as to the claims in Group I is whether the appellant exercised the faculty of invention in merely substituting Cellophane, a particular kind of cellulose, for cellulose when making a record with a conventional cutting head, as disclosed in the prior art. To support the holding of lack of invention in making such substitution, the solicitor argues that the issue thus presented need not be confused by the verbiage of the involved claims, such as "birefringent medium," "rotative modulations," and "placing strains on the medium." Those expressions, he correctly states, relate to the result or operation of using Cellophane as the record material and do not of themselves make the claims patentable.

The patents to Ryan and to Symonds, as the examiner noted, disclose and teach the use of Cellophane in sound records. The Zaddach disclosure sets forth the use of cellulose, among other substances, in making a record; and again in his specification after mentioning cellulose he adds "(cellophan)". Appellant argues that Zaddach's described reference to "cellophan" is employed by him in connection with a carrier and not a record. It was the position of the tribunals of the Patent Office, and we think they were correct in their conclusion, that Zaddach's reference to "cellophan" would readily suggest to any person skilled in the art the desirability of using Cellophane which is a particular kind of cellulose.

As correctly pointed out by the examiner, Zaddach clearly contemplated that the record medium has the characteristics claimed by appellant in that the medium must be transparent and optically active. Furthermore, the disclosure of Zaddach clearly contemplated the use of the substance in the shape of a thread or ribbon.

■ With reference to Group II, consisting of claims 32, 35, 39, 45, and 54 relating to the reproduction of the signals,

the board held that this group of claims does not patentably differentiate from Ryan or Lohn. Claims 32, 39, and 45 are for method, and claims 35 and 54 for apparatus. Each of those claims in the preamble merely describes the character of the record to be reproduced and therefore affects neither the elements of the involved apparatus nor of the method. Furthermore, the fact that the steps of the method claimed are applied to subject matter that differs from that of the references does not necessarily give the claims a patentable distinction. See In re Williams, 87 F.2d 499, 24 C.C.P.A. Patents, 861.

With reference to claim 32, appellant concedes in his brief that "Lohn discloses reproduction from a light refractive signal record * * *." The disclosure of the patent to Lohn also shows that he scans the record in his reproducing arrangement with a beam of light; that the beam is refractively modulated by the undulations of the record, and that the modulated beam is translated into signals, as called for by the claim.

As stated in appellant's brief, claim 54 "defines precisely the slit in screen 39 which is effective to convert the refractively modulated beam into an intensity modulated one," as called for by that step described in claim 32; and that Lohn fails utterly to even faintly suggest such a feature, as called for in claim 54, of "A screen positioned in the path of the *refracted* beam." The point in issue was squarely decided against appellant's contention by the examiner. He held that the slit in appellant's device is a conventional one used in common practice in sound film reproduction, as shown in the patents to Snook and to Lohn. While no express reference is made to the slit in the patent to Lohn, such a slit is schematically shown therein between the film record and the photocell, as called for by claim 54. The board affirmed the examiner's position and we see no error in such action.

With reference to the limitation in claim 54 which calls for "means to produce a thin beam of light," it is noted that the disclosure in the specification of Zaddach provides for "A very concentrated and fine beam of light" for the purpose of reproducing the record. That disclosure fully meets the limitation here in issue.

Claim 35 relates to a reproducer and differs from claim 32 in that the scanning beam of claim 35 calls for one of substantially monochromatic light. A scanning beam having such a source of light is clearly disclosed in the patent to Snook and preferably used in the reproducer illustrated and described by him.

Claims 39 and 45, which include the limitation of scanning the record with polarized light, are not inventive over the disclosures of either the patent to Ryan or the patent to Lohn, as the board properly held. The reproducing system disclosed by Ryan, for example, clearly involves the use of polarized light.

Claim 40 was the only one of Group III rejected by the board. We find no sufficient reason advanced by appellant's argument which would warrant us in reversing the holding of the board with respect to such claim. It does not involve invention, the board held, to scan the record disclosed by the patent to Croll, No. 276,708, in the manner taught by the disclosure, say, of the patent to Ryan, which involves reproduction of sound by scanning the record with polarized light.

Appellant treats the rejected claims in five enumerated groups and analyzes each claim and the limitations thereof with a view of establishing that in the rejection of such claims the tribunals of the Patent Office erred either in fact or in law or in both respects. However, a careful examination of the record together with the arguments and authorities cited by appellant leads to the conclusion that the position of the solicitor is well taken and that the decision from which the appeal has been taken is correct.

In view of that conclusion, it is deemed unnecessary to discuss and pass upon other points which have been raised by appellant, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.