33 C.C.P.A. (Patents)

**In re SCHERL.**

**Patent Appeals No. 5163.**

Court of Customs and Patent Appeals.
June 11, 1946.

Charles C. Scheffler and Eugene L. Greenewald, both of New York City (Charles H. Howson and Donald C. Harrison, both of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in his rejection of claims 1, 3, 6, 10, 13, and 15 in appellant's application for a patent for alleged "new and useful improvements in Pressure Welding Process." The claims were rejected not only as lacking invention over the prior art but also on the ground of multiplicity.

No claims were allowed and appellant petitioned the Board of Appeals for the reconsideration of its decision. The board heard and considered the petition but denied it with respect to making any change in the decision as rendered.

The references are—Lytle et al., 2,231,014, Feb. 11, 1941; Renner, Jr., 2,231,027, Feb. 11, 1941; Anderson, 2,277,473, Mar. 24, 1942.

Claim 13 is considered illustrative. It reads: "13. Process for butt-welding members of weldable metal, each having a margin provided with a beveled portion and with an unbeveled, low forwardly-extending shoulder extending beyond an adjacent margin of said beveled portion; which comprises placing said unbeveled shoulders of the respective members in abutting relation and surface-to-surface contact, whereby each beveled portion cooperates with the beveled portion of the other of said members to form a welding groove having tapered end margins defining an included angle of at least 120°, the metal thickness of the respective members at the abutting surfaces being at least approximately three-fourths the overall metal thickness of said members; pressing said members together while thus abutted; while said surfaces are so pressed together in abutting relation, heating the metal of said abutting surfaces and of that portion of said members lying subjacent said groove to a welding temperature substantially no higher than the solidus temperature of the metal; and restricting the resultant outward flow of upset metal to a zone lying within the confines of the beveled portions of said members."

The alleged invention is described by appellant as a process for pressure welding metal members, such as flat plates, pipes, beams, and bars, wherein the abutting surfaces of the members to be welded are softened by heat and forced together under high pressure.

A portion or portions of the surfaces to be abutted are beveled in such manner as to define a V-shaped groove when the mem-

bers to be welded are placed in abutting relation. The groove, "which may have an included angle of around 120° to around 150°, and extending longitudinally" of the interface formed by the members in abutting relation, is utilized to avoid or restrict the flow of upset metal beyond the outer surfaces of the members during the welding operation.

Where two opposite sides of each member are beveled, the thickness of the unbeveled portions should be not less than about one-half of the maximum thickness of either member when unbeveled, or about three-fourths where but one side of each member is beveled.

The patents to Lytle et al. and Renner, Jr., disclose processes, of the type employed by appellant, for butt welding unbeveled metal members, while the patent to Anderson teaches a surface fusion welding of metal members involving the use of surfaces beveled to provide included angles of 90% or less.

Appellant alleges that the resultant joints produced by the processes defined in the cited references invariably had massive ridges of upset metal protruding at the joint as welded and that the removal of such upset metal necessitated an additional operation, costly in time, labor, apparatus, and material and often conducted under disadvantageous conditions in the field.

Appellant contends that the combination of features defined by the appealed claims substitutes a new teaching for the teachings of the cited art and produces a new, useful, and unexpected result differing in kind from the resultant joints produced by the processes of the art of record. Appellant relies upon the proposition that the resultant joint produced by his process is approximately free from upset material extending laterally beyond the normal surface level of the members as welded "and the problem of removing surplus upset metal has been greatly simplified or eliminated."

Appellant takes the further position that in comparison with the prior art, his process provides welded joints that are more satisfactory in strength, ductility and other physical properties.

In using included angles of around 120° to around 150° in the formation of the V-shaped groove, which is filled up by the surplus metal during welding, appellant contends he has secured a critical result, and that statements and examples in his specification, as well as affidavits submitted by him in the prosecution of his application before the tribunals of the Patent Office, provide actual proof of invention as defined by the claims on appeal.

The Solicitor for the Patent Office argues here that:

"The basic grounds of rejection of the claims on the merits are first that it is old in fusion welding to bevel the edges of parts to be welded to form a V-shaped groove which is filled up during the welding, this being conceded in appellant's brief * * *, and shown by the Anderson patent; secondly, that it would require no invention to employ such grooves in pressure welding of the kind shown by Lytle et al. and Renner, where the weld is formed by heat and pressure without actual melting; and, thirdly, that the exact angle of the sides of the groove is a matter of choice or experimental determination and that the use of an angle of 120° or more would involve no invention.

\* \* \* \* \* \*

"Moreover, regardless of admissions, it is obvious that the board idea of using beveling in pressure welding is not patentable. Fusion and pressure welding shade into each other so that it is difficult to say exactly where one ends and the other begins. * * *"

Where the issue of criticality is involved, the applicant has the burden of establishing his position by a proper showing of the facts upon which he relies. In re Swenson et al., 132 F.2d 1020, 30 C.C.P.A., Patents, 809, 813.

Appellant does not claim the use of grooves in pressure welding, per se, as a patentable concept but relies upon the use of the particular angle made by the sides of his groove as constituting a critical difference which is inventive over the disclosure of the cited references. The question as to this point is whether he has sustained his burden of proof.

■ The angle used by Anderson is shown and admitted to be as much as 90° and the angle used by appellant is at least 120°. A difference of but thirty degrees in the respective angles, in the absence of proof to the contrary, is one of degree only.

■ Appellant's specification does not state that a particular range is critical but describes a groove that "may have an included angle of around 120° to around 150°." Obviously, it cannot be said that such a description is a clear disclosure that the use of an angle of at least 120° is critical. The terms "may have" and "around" do not definitely indicate the use only of an angle of 120° or suggest that an angle, say, of 90° would not be suitable to accomplish the desired result. Other statements made in the specification together with examples cited therein are likewise clearly insufficient from the standpoint of factual evidence to establish a showing of critical superiority.

Of the two affidavits submitted by appellant in support of his position on the issue of criticality, the first alleges that the resultant joints produced by processes old in the art do not have satisfactory strength, ductility and other desired physical properties. No actual figures are submitted by appellant, however, which establish this conclusion.

Moreover, in the comparative tests described in the affidavit, the resultant joints were produced by grooves of 90° and 134°. An angle of 120° was not employed, and the angle of 134° is not a limitation defined in any of the appealed claims. The resultant joints actually welded in the tests were not produced, but the difference between them, as shown by the figures in the illustration submitted, is clearly one of degree only.

■ The second affidavit upon which appellant relies was submitted by appellant after the board rendered its decision. Since the board did not remand the case to the Primary Examiner under the provision of rule 138 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, the affidavit is not properly before this court and may not be considered here. In re Christmann et al., 128 F.2d 596, 29 C.C.P.A., Patents, 1037.

■ In the claims on appeal, the limitation which defines an exact amount of the metal thickness of portions of the respective members at the abutting surfaces cannot be held to involve an inventive concept. As correctly pointed out in the brief of the Solicitor—" * * * There is clearly nothing to show that 'at least one-half' or 'at least three quarters' is in any way critical in this connection. Whether one face is beveled or two is also merely a matter of choice, both arrangements being old in fusion welding."

The following statement in claim 3 is relied upon by appellant as defining a patentable feature of his disclosure—" * * * and maintaining an approximately constant unit pressure upon the abutting surfaces as the area of such interface increases during the welding step."

We are unable to agree with appellant's argument on the point in question. If appellant's concept does not involve the use of this obvious expedient, Lytle et al. shows that it is old to maintain a predetermined pressure of a specified number of pounds per square inch during the welding process. "Naturally, if it were desired to keep a reasonably uniform pressure on a joint of varying area," as correctly stated in the Solicitor's brief, "the total pressure could be so regulated as to effect this result."

■ It is our opinion that appellant in the adoption of his process for welding joints has done the thing that the art of record clearly suggests doing, and therefore no invention is defined by the appealed claims. See In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823.

In view of our conclusion, we deem it unnecessary to discuss the question of multiplicity or other points raised and argued by appellant, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.