34 C.C.P.A. (Patents)

## Application of TETER.
### Patent Appeal No. 5227.

Court of Customs and Patent Appeals.
Jan. 7, 1947.

1008

Pennie, Edmonds, Morton & Barrows, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claim 4 in appellant's application for a patent for alleged improvements in the catalytic cracking of hydrocarbon oils. Claims 2, 3, 5, and 6 were allowed.

Claim 4 was rejected for the stated reason that it defined no subject matter patentable over the disclosure of the patent to Wilson, No. 2,249,924, granted July 22, 1941.

Claim 4 reads—

"4. In the catalytic cracking of hydrocarbon oils the improvement which compromises heating a substantial liquid body of oil to be cracked at a moderate cracking temperature while in a vertically elongated cracking zone containing superposed baffling means adapted to distribute dispersed upwardly flowing gaseous products and to impede the downward flow of suspended solids, supplying a finely divided argillaceous catalyst dispersed in oil to be cracked to the upper end of said cracking zone, injecting gaseous products into the lower part of said zone, taking off cracked vapors and gases from the upper end of said zone, withdrawing residual oil and admixed spent catalyst from the lower end of said zone, and controlling the rate at which gaseous products are supplied to the lower portion of said zone relative to the rates at which oil to be cracked and admixed catalyst are supplied to the upper part of said zone to maintain a high ratio of dispersed catalyst to oil within said zone."

The subject matter of the rejected claim relates to a process directed to the production of gasoline by the catalytic cracking of hydrocarbon oils in an apparatus.

The elements of the apparatus selected by appellant as pertinent to this appeal are his vertically elongated cracking tower mounted in a furnace setting together with the four communicating connections through which the involved substances are conducted according to the procedure defined by the rejected claim. The cracking tower is internally provided with baffles consisting of an upper section and a similar lower section of packing material.

Two separate heater units are also provided wherein stocks to be processed may be heated by means of a connection through which the stocks are by-passed and preheated prior to their introduction into the cracking tower or zone.

The patent to Wilson describes the steps of a process for the catalytic conversion of hydrocarbons into motor fuels in an apparatus.

The elements of the apparatus described by the specification and indicated in the drawing, so far as pertinent, are a conversion chamber or vertically elongated cracking tower provided internally with suitable baffle plates or other contact means in the upper and lower sections and four communicating connections through which the involved substances are conducted.

Two heater units are also provided wherein gas oil and gases are separately heated and thereafter discharged into the conversion chamber. To control the temperature of that chamber, one of such heaters is provided with a connection through which gas oil to be cracked is by-passed, preheated and partially cracked prior to its introduction into the conversion chamber or cracking zone.

The record discloses that in carrying out the process disclosed by the cited reference, a catalyst dispersed in oil to be cracked is supplied by a connection to the upper end of the cracking tower and near the same point oil is introduced by a separate con-

nection; gaseous products are injected by a pump into the lower part of the tower through a connection; the superposed baffling means permits the liquid to flow from the upper part of the tower without obstruction to the bottom of the tower and permits the vapor and gases in the tower to flow to the top thereof; the cracked vapors and gases are taken off by a connection from the top of the cracking tower while the catalyst and residual oil is withdrawn by a connection from the lower end of the tower.

The Primary Examiner analyzed and discussed the respective steps of the process defined by the appealed claim together with those disclosed by the reference patent and in the following statement indicated that the only difference between them involved no patentable subject matter—

"The rejected claim recites the broad and indefinite limitation of controlling the rate at which gaseous products are supplied to the lower portion of the cracking zone relative to the rates at which oil to be cracked and admixed catalyst are supplied to the upper part of said zone to maintain a high ratio of dispersed catalyst to oil within said zone.

"While the reference does not mention these limitations in the language of the appealed claim, it seems perfectly obvious that the patentee exercises the control in question. It is obvious that the gas, catalyst and oil are introduced into the cracking tower at controlled rates since the lines by which they are introduced are provided with pumps. * * *

"The limitations of the appealed claim are so broad and indefinite that they must be considered as met in the reference."

The Board of Appeals in affirming the action of the examiner held that the process defined by the appealed claim reads substantially on the process disclosed in the patent to Wilson, and after comparing not only the difference in the respective temperatures to which the oil is heated but also the difference in the proportions of catalyst to oil maintained within the respective towers, agreed on the whole with the rejection of the appealed claim for the reasons stated by the examiner in his statement on appeal. In rendering its decision the board made the further pertinent statement—

"The principal difference is that applicant begins his process with what the claim states is a "substantial" body of oil in the tower, whereas Wilson cascades his oil through the tower. The word "substantial", however, is too indefinite and broad to afford a basis on which patentability over Wilson may be predicated. It is not clear whether the word "substantial" means that the body of oil must be of any particular depth in the tower, and it seems quite possible that some oil would accumulate and form a body of oil in Wilson at least below the gas distributor at the end of line 33."

Appellant concedes that there is considerable "superficial" similarity between the process embodied in the rejected claim and the process disclosed by the reference patent but contends that in reality they have little in common and that the rejection of the claim was due largely to the alleged error of the examiner and the board in comparing the respective features of the processes singly instead of comparing such features as a whole.

Appellant relies upon 17 reasons of appeal and devotes 12 paragraphs of his brief to a comparative analysis of enumerated differences which he alleges define subject matter patentable over the disclosure of the cited reference. The Solicitor for the Patent Office concedes that appellant's application discloses invention but suggests that the subject matter of that invention was completely measured and protected by the claims allowed by the examiner.

It is noted that the rejected claim is directed not to an apparatus but to a process performed by the operation of the elements of an apparatus. Accordingly the question here in issue is not whether the apparatus and the process defined by the limitations of the rejected claim differ from the apparatus and process disclosed by the patent to Wilson but whether the respective processes in and of themselves are patentably different.

Appellant contends that the very essence of his invention resides in that limitation

of the rejected claim which defines the maintenance of a moderate cracking temperature in the zone wherein catalytic cracking is effected whereas the Wilson patent mentions temperatures only as temperatures which are to be maintained in the pipe heater where no catalyst, no gas, and no baffling means of any form are present.

The board as hereinbefore noted discussed and passed upon the point involving the respective temperatures upon which the appellant here relies as a patentably distinguishing feature of his process over the process of the cited reference.

The specific cracking temperature to which the oil is heated in appellant's process, as described by his specification and correctly pointed out by the Board of Appeals, is 600° to 900° F. compared to the cracking temperature ranging from 850° to 900° or 950° F. disclosed by the patent to Wilson. The record discloses that one of appellant's exemplified values is 900° F., a cracking temperature included within the range of cracking temperatures disclosed by the patent to Wilson.

Accordingly there is no basis for holding that the rejected claim defines patentable subject matter in the limitation which defines "a moderate cracking temperature."

It is true that in the process disclosed by the patent to Wilson gas oil is preheated to cracking temperature in a pipe heater and partially cracked before its admission to the conversion chamber. Under those conditions "about 10 to 25% of the gas oil may be converted to gasoline." Moreover, a slurry of catalyst and cooler gas oil is separately introduced near the same point in the conversion chamber to avoid "the necessity of directly heating the catalyst to the desired conversion temperature."

The maintenance of the desired cracking temperature in the conversion chamber of the patent to Wilson, as hereinbefore described, is accomplished by introducing a stream of heated gas oil to flow countercurrent to the reaction mixture in the conversion zone or chamber wherein catalyst, gas, and baffling means are present during the cracking process.

Appellant likewise provides in his specification that stocks to be cracked may be subjected to preliminary heating in a heater prior to their introduction into the vertically elongated cracking zone, as follows:

"In carrying out the process of my invention substantially all of the heating may be directly applied to the oil in the cracking zone, as by external or internal indirect heat exchange. However, the heating load directly applied to the cracking zone may be reduced by preliminary heating of the gaseous products supplied to the lower end of the cracking zone and also by preheating the fresh charge of reflux condensate or both prior to their introduction into the cracking zone. * * *"

A careful analysis of the respective disclosures fails to convince the court that a patentable distinction over the cited reference resides in the fact that in the patent to Wilson the gas oil is preheated to cracking temperature and partially cracked before such oil is admitted to the reaction chamber or cracking zone.

Appellant relies upon an alleged patentable distinction over the disclosure of the patent to Wilson in the alleged fact that the conversion chamber of the patent cannot be characterized as a zone "containing superposed baffling means adapted to distribute upwardly flowing gaseous products and to impede the downward flow of suspended solids" since that portion of the conversion chamber which lies below the point of gas introduction as disclosed by the cited reference "does not contain *any form of baffling means,* must less baffling means of the particular type required to meet the recitations of rejected claim 4."

The rejected claim contains no particular limitation reciting apparatus other than "superposed baffling means" adapted to perform a desired result. Limitations not recited in a claim cannot be relied upon to impart patentability to that claim. In re Saunders et al., 154 F.2d 693, 33 C.C.P.A. (Patents) 1001. Furthermore, a limitation drawn to "superposed baffling means" cannot be relied upon by appellant to impart patentability to his claim for process. In re Oakley, 73 F.2d 934, 22 C.C.P.A. (Patents) 834.

In any event, appellant's contention on the specific point in issue is without merit

for the reason pointed out by the Primary Examiner that the patentee uses superposed baffling means in his conversion chamber which perform a suggestively similar if not the same function that is performed by the baffling means in the cracking zone disclosed by appellant.

The board held in effect that the ratio of liquid oil in the respective towers during the cracking process was a difference only in proportions or amounts of ingredients and that a patentable distinction was not defined by the term "substantial" as employed in the rejected claim for the stated reason that such term was too broad and indefinite.

It is obvious that no person skilled in the art would be enabled to practice the process defined by the rejected claim without considerable research to determine the definite proportions or amounts of ingredients to be employed by him in reaching the desired result.

Therefore appellant's claim does not meet the requirement of the statute which provides that an applicant for a patent shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. In re Beach, 152 F.2d 981, 33 C.C.P.A. (Patents) 815.

Counsel for appellant in his oral argument made a statement to the effect that appellant was the first person ever to use the process defined by the rejected claim with a new result. The only support in the record for that assertion are certain general statements contained in appellant's application. The court does not, however, consider those statements sufficient to establish the involved point by a proper showing. In re Berger, 143 F.2d 971, 31 C.C.-P.A. (Patents) 1234.

The alleged differences between the respective processes when analyzed show no feature, singly or as a whole, which patentably distinguishes the process defined by the rejected claim from the process disclosed by the patent to Wilson.

The record clearly discloses moreover that appellant has done only the thing that the reference patent suggests doing. For that reason appellant is not entitled to the allowance of the rejected claim. In re Stover, 146 F.2d 299, 32 C.C.P.A. (Patents) 823; In re Herthel, 156 F.2d 170, 33 C.C.P.A. (Patents) 1202.

In view of the foregoing conclusion no useful purpose would be served in presenting and passing upon other points raised by appellant and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.