35 C.C.P.A.(Patents)

**Application of ANDREAS.**
**Patent Appeal No. 5335.**

Court of Customs and Patent Appeals.
Nov. 17, 1947.

Charles S. Grover and Roberts, Cushman & Woodberry, all of Boston, Mass. (William M. Cushman, of Washington, D. C., and Robert Cushman, of Boston, Mass., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. B. Whitmore and Howard S. Miller, both of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner in rejecting claims 2 to 11, inclusive, and claims 16 in appellant's application for a patent for "new and useful Improvements in Imbibition Printing." Claims 12 and 15 were allowed.

The references are:

Ives 1,188,939, June 27, 1916.
Capstaff 1,196,080, August 29, 1916.
Troland, 1,535,700, April 28, 1925.

The rejected claims are drawn to method with the exception of claim 16 which is drawn to the article produced by the claimed method of printing color pictures. Claims 5 and 11 were rejected as being drawn to nonelected species and, therefore, need not be here considered on their merits.

Claim 2, which is generic, is illustrative and, for the purpose of this appeal, sufficiently descriptive of the involved subject matter. It reads:

"2. The method of printing pictures upon a dye-absorptive light-sensitive blank which comprises first photographically printing the picture on the blank to form an image, differentially varying the hardness of the blank under the control of the image so that the blank is less absorptive in the high-light portions of the picture than in the shadow portions, and then printing the picture on the blank with an imbibition matrix, the picture being in register with said image."

The ground upon which appellant relies to establish patentability is summarized by his counsel as follows:

"Appellant is the first to discover that imbibition prints can be greatly improved by a preliminary treatment which makes the gelatin of the blank harder where the high lights are to be printed than where the shadows are to be printed."

The patent to Ives, which has long since expired relates to color photographs, multicolored prints, motion picture films, together with a three-color method of forming each of three different images, or one-color components, to create in three successive steps a final single true-color image of the pictured object.

The specific procedure employed in the patent to Ives is described in the following excerpt from the examiner's statement:

"The Ives patent, which is the main reference, discloses a multicolor process in which the red-aspect negative is first photographically printed in a light-sensitive gelatin layer and toned to a blue image (page 2, line 45 on); the gelatin layer is then sensitized with a bichromate and photographically printed under the green-aspect negative *or a positive thereof,* to produce a hardened gelatin image which is dyed (page 2, line 82 on); and the third image is printed in registered relation onto the gelatine containing this hardened image by dye transfer from a positive imbibition matrix made from the blue-aspect negative (page 2, line 129 on). * * *" (Italics quoted)

Ives states in his specification that he may omit that step of his method which calls for the introduction of the first color and print only the second and third colors, irrespective of whether there has been a previous color printed. That is, the patentee may print only the differentially hardened image of his second step and the imbibition image of his third step to comprise his entire method. This step is the one with which we are chiefly concerned herein.

It is important to note that in his specification Ives also states that he may print the differentially hardened image of his second step either from a negative or a positive.

The examiner in rejecting the involved claims relied solely upon the disclosed procedure for forming a differentially hardened image by printing the bichromate layer from a positive. Regarding the teaching of the patent to Ives in that respect, the examiner made the following rmarks:

"When the gelatin layer with or without the blue image is impregnated with the bichromate, it is rendered capable of hardening upon exposure to light. When exposed under the positive of one of the color selection negatives, a hardened negative image results. This same gelatin layer containing the hardened negative image, serves as the blank for the positive dye transfer image next applied, and necessarily forms an inversely hardened image which prevents diffusion and unsharpness of the dye transfer image in the same manner as in this application."

The patents to Capstaff and Troland, so far as pertinent, refer respectively to the use of a hardening bleach bath and a hardening developer. They disclose methods of differentially hardening the gelatin coating of a dye absorptive blank in each of which the gelatin layer is sensitized with a silver salt emulsion instead of a bichromate. There is no dispute that the technique of differential hardening as disclosed by these two patents is not new.

The examiner held that the procedure described in the patent to Capstaff of developing a silver image and hardening it with a hardening bleach bath, and of hardening the silver image with a hardening developer, described in the patent to Troland, was well known in the art as the equivalent of the bichromate procedure for hardening the image described in the patent to Ives.

Claims 2, 6, 7, 8, and 16 were rejected by the examiner as lacking invention over the disclosure of the patent to Ives; claims 3 and 9 as unpatentable over the patent to Ives either alone or in view of the disclosure of either of the patents to Capstaff or Troland; and claims 4 and 10 as unpatentable over the patent to Ives alone or in view of the patent to Troland.

The position taken by the examiner was that the patent to Ives, the principal reference, disclosed differential hardening as a preliminary step in making imbibition prints, and that the secondary references, Capstaff and Troland, disclosed the two specific methods claimed by appellant of differentially hardening gelatin.

Appellant requested the examiner to reconsider his decision and, among other things, raised the objection that the disclosure of the patent to Ives was purely accidental, and that there was no legal basis for his action in modifying the disclosure of that patent by substituting the hardening technique disclosed by the patents to Capstaff and Troland to produce an anticipation of appellant's claimed method.

The examiner overruled that objection together with the other points raised by appellant and adhered to his original decision. His action in so doing together with his action in finally rejecting the appealed claims as hereinbefore described was affirmed by the decision of the board.

Appellant argues here as he did before the respective tribunals of the Patent Office that the disclosure of the patent to Ives was purely accidental and for that reason was wihout value in anticipating the subject matter defined by the claims on appeal. On the point in question, appellant's position here is presented by the following statement in his brief:

"While Ives was evidently quite unware of the fact, accidentally it probably so happened that the differential hardening of the gelatin layer incidental to the formation of the second component would affect

the third component formed by imbibition. If he printed his second component from a positive it would make the gelatin harder in the high lights than in the shadows and, unbeknown to him, if the degree of hardening happened to be right for a purpose entirely beyond his ken, it would improve the quality of the third imbibition print. On the other hand, if he printed his second component from a negative it would make the gelatin harder in the shadows than in the high lights; and instead of accidentally helping the third imbibition print it would make it worse."

The fair inference to be drawn from the foregoing statement by appellant is that the quality of the imbibition prints disclosed by the patent to Ives is improved by the preliminary printing of his second component from a positive which makes the gelatin harder in the high lights than in the shadows.

Appellant contends, however, that the disclosure of the reference is of no value because Ives never conceived of the effect which could be produced by using a positive in the preliminary printing of his second component, and was evidently quite unaware of the fact that the differential hardening of the gelatin layer incidental to the formation of the second component would affect the third component formed by imbibition "if the degree of hardening happened to be right for a purpose entirely beyond his ken."

In support of his position appellant refers several times in his brief to certain passages in the specification of the patent to Ives and states that Ives "repeatedly says that no one of the prints affects any of the other three"; that Ives also says the formation of each component does not "interfere with a proper introduction of subsequent ones" or cause any "mutual impairment" of the other components or "conflict" with such other components.

The Solicitor for the Patent Office takes issue with appellant as to the significance of the passages hereinbefore described and urges that the record does not bear out the interpretation which appellant places upon them. The solicitor deals with that point in his brief as follows:

" * * * Appellant (Br. 16, 19, 20) refers to certain passages in Ives as saying 'no one of the prints affects any of the other three.' This statement is not borne out by Ives. The Ives passages cited indicate merely that one image does not 'interfere with the formation of the subsequent images' (R. 36, lines 51 and 52); that the image forming steps 'cooperate with each other by their independence of introduction and avoidance of mutual impairment, and by ability of the three monochrome images to mutually blend without conflict so as to give clear and satisfactory multi-color pictures' (R. 37, lines 47–52); that none will 'interfere' with the others, and that the introduction of none will 'weaken, diffuse or otherwise injure or destroy the previously introduced images' (R. 35, lines 76–80). Saying that images 'cooperate' in such a way as not to 'injure' or 'interfere' with other images or cause undue diffusion is hardly the same as saying none in any way 'affects' the others: On the contrary, Ives recognized (R. 37, lines 66–84) that imbibition printing on the blank at a time when the blank was in fact unhardened caused excessive diffusion, whereas after the differential hardening, his use of imbibition printing was 'entirely suitable' (R. 37, line 81)." (Italics quoted)

The specification of the patent to Ives states that the gelatin layer when printed from a positive is "followed by immersion in the proper color of dye so as to cause the selective absorption of color into the gelatin in accordance with the negative." (Italics not quoted) That statement, according to the board's decision, is the equivalent of the following statement in appellant's specification:

" * * * In either case the blank is made harder and less dye-absorptive in the high-light portions of the picture than in the shadow portions without leaving any substantial visual effects."

The foregoing excerpts from the respective specifications were cited by the board to show that there was no merit in appellant's contention that Ives never conceived of the effect which could be produced by using a positive in the preliminary printing of his second component and was unaware of the fact the differential hardening of the

gelatin layer would affect the third component formed by imbibition.

Moreover, there is no foundation for appellant's argument that the specific degree of hardening to be employed for the purpose of effecting the differential hardening of the gelatin layer so as to improve the quality of the imbibition print was unknown to Ives since that matter is neither disclosed nor claimed by appellant. His claims are so drawn as to include any and every degree of hardening, and appellant's procedure in that respect reads on the positive procedure defined by the reference patent. No facts in the record have been indicated which support appellant's contention that he disclosed knowledge to the public on the point in question which to Ives was "entirely beyond his ken."

The disclosure of two alternative hardening procedures is relied upon by appellant to further establish the fact that Ives did not know or understand that the hardening of the gelatin layer incidental to the formation of the second component would affect the third component formed by imbibition. Appellant contends that if the use of a positive in printing the second component would improve the imbibition print, the use of a negative would impair the print to the same degree. The import of appellant's argument on this point is that Ives did not discover the great advantage of one of his alternative procedures over the other.

The examiner held and the board affirmed his action in so doing that since Ives gave specific directions for printing the second component from a positive, his disclosure in the same specification of an alternative procedure does not render his disclosure of the positive procedure less specific for the future guidance of persons skilled in the art, and that the public is entitled to all the advantages of that procedure even if they were never appreciated by the patentee.

The public cannot be deprived of the use of an old method which teaches how to obtain a desired result because a person in a subsequent application explains to the public why that result is obtained and shows that the old method is capable of producing a new advantage that was not known before. See Lovell Manufacturing Company v. Cary, 147 U.S. 623, 634, 13 S.

Ct. 472, 37 L.Ed. 307; DeForest Radio Co. v. General Electric Co., 283 U.S. 644, 682, 51 S.Ct. 563, 75 L.Ed. 1339. The Supeme Court of the United States has further held that "It is not invention to perceive that the product which others had discovered had qualities they failed to detect." General Electric Co. v. Jewel Incandescent Lamp Co. et al., 326 U.S. 242, 249, 66 S.Ct. 81, 84, 90 L.Ed. 43.

After a critical examination of the record and the cited authorities, we agree with the tribunals of the Patent Office in holding that the disclosure of the patent to Ives was not an accidental disclosure but was a disclosure of such precision as would enable a person skilled in the art to carry out the method therein defined and thereby uniformly obtain the desired result.

Another point raised by appellant is that there was no justification for the action of the tribunals of the Patent Office in combining the references to build up an anticipation for the claims on appeal, since the only suggestion of the combination is to be found in appellant's disclosure and the modification of the procedure described in the patent to Ives would involve a change in that procedure which Ives did not contemplate.

The point here in issue is whether the art of record suggests to one skilled in the art the modification that has been made by appellant in substituting one or another of two well known hardening procedures for the hardening procedure that is well known and described in the patent to Ives. See In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939. We think the art of record clearly suggests doing what appellant has done and that invention was not exercised by him in combining the elements defined by his claims on appeal.

The ground upon which each of the appealed claims was rejected by respective tribunals of the Patent Office has been reviewed, and we find no basis therein for overruling the decision of the board. In view of that conclusion we do not deem it necessary to present and pass upon other points raised here by the argument of appellant, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.