37 C.C.P.A. (Patents)

**In re BRENN.**

**Patent Appeal No. 5680.**

United States Court of Customs and Patent Appeals.

May 9, 1950.

James T. Kline, Bridgeport, Conn., for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JOHNSON, Judge.

The appellant believes that the Board of Appeals of the United States Patent Office erred in affirming the decision of the Primary Examiner who rejected all of the claims (1, 2, 6 to 12) of his application for letters patent for an improved "Method of Making Hectograph Master Forms." The claims were rejected as unpatentable over a combination of patents. Those references are:

| | | | | |
|---|---|---|---|---|
| Cooper, | 1,330,786, | Feb. | 17, | 1920. |
| Lawson, | 1,639,040, | Aug. | 16, | 1927. |
| Willard, | 1,753,764, | Apr. | 8, | 1930. |
| Lewis et al., | 2,118,888, | May | 31, | 1938. |
| Foster (Reissue), | 21,204, | Sept. | 12, | 1939 |
| Marchev, | 2,216,594, | Oct. | 1, | 1940 |
| Hess, | 2,389,854, | Nov. | 27, | 1945. |

Claims 1 and 6 are illustrative, and read as follows:

"1. The method of making hectographic master forms which includes the successive and continuous steps of progressively superposing a continuous strip of master form material with a continuous strip having a coating of hectographic transfer material in juxtaposition to the reverse side of the master strip, progressively printing a form on an outer surface of the superposed strip and in the same operation imprinting said form in reverse on the inside of the master strip through the medium of said hectographic

transfer coating, and progressively inserting a continuous protective strip between the coated strip and the hectographic imprinted surface of the master strip.

"6. The method of making hectographic master forms from a continuous web divided into a plurality of strips by a longitudinally extending coating of hectographic transfer ink, which includes the successive and continuous steps of progressively folding the web upon itself longitudinally to produce a pile with the coating in contact with an uncoated strip of the web, progressively printing a form on the outside of the strips and in the same operation imprinting said form on the inside face of the uncoated strip through the medium of the hectographic ink coating on a contiguous portion of the web, and progressively inserting a continuous protective strip in the folds of the pile between said coating and hectographic imprinted strip."

The alleged invention pertains to the manufacture of continuous strips of hectograph forms. A web of paper, coated with copying ink or transfer material on one half of its surface, perforated down the center along the border of the coating material, with the non-coated half folded over on top of the coated half, is fed through a printing machine. In printer's ink the press prints a form on the top surface, and that form is, by the pressure of the printing press, imprinted in reverse impression on the reverse side of the top sheet by the copying ink transfer material from the coated portion of the folded web below. A thin protective strip of paper is next interleaved between the folded web surfaces. It is the function of that strip to prevent the transfer of smudges or marks to the reverse side of the top or "master" sheet as the continuous folded web is fed through the machine. The web may be perforated transversely at regular intervals to divide it into proper lengths for the forms printed thereon, or the web may be cut with a knife into individual forms, as it advances through the machine. After the continuous protective strip has been interleaved in the continuous folded web, a second printing operation may be performed where it is desired to add to

the form being continuously produced in such a manner that the additions will be printed on the upper surface of the master sheet but not reproduced on the reverse thereof, the protective sheet effectively preventing the transfer of the coating ink. At any convenient point a device may be stationed which introduces into the advancing web, holes along the margin for feed-in, registering, or aligning purposes. By the simple expedient of turning the folded continuous web over and running it through the press and past the various stations where perforation, punching, etc., take place, the printing press may print the form against the outside surface of the web half coated with transfer material which would transfer a positive impression in coating ink onto the upper surface of the non-coated web half. Thus, master sheets may be prepared by the applicant's method for use in either the gelatin plate or spirit method of duplication which require the positive and reverse impressions respectively. As the transversely perforated continuous web leaves the machine, it may be zigzag folded along the transverse perforation, forming a stack.

The claims were rejected by the examiner as unpatentable over Marchev, Cooper, Willard, and Lawson in view of Hass, Foster, and Lewis et al. The board affirmed that rejection. All of the claims are drawn to the method.

Marchev's patent discloses a method in which a web of paper is advanced past a station where an adhesive applying apparatus and a transfer material applying apparatus are in adjacent transverse relation in such a manner that half of the continuous web is coated with adhesive and the other half is coated with transfer material. A thin continuous aluminum foil is withdrawn from a roll and applied to the adhesive coated portion of the web by rollers. The web is perforated along the line at which the transfer coating and the foil meet. The advancing web is cut by a knife into suitable lengths. The severed lengths of web are then folded along the perforation so that the coated face of one half is against the foil face of the other. The resulting "book" is

then ready for use in accordance with the teaching of the patent.

Cooper's disclosure relates to continuous fanfold webs for use in typewriters. He states that in prior art fanfolds the web is folded back and forth longitudinally to produce many plies of work, each ply being printed with a form corresponding to that printed on the other plies, and the fanfold web being interleaved with carbon. Cooper's invention consisted in feeding separate webs simultaneously through a printing machine, each web passing through separate printing couples; bringing the separate and now printed webs into assembled relation; perforating the assembled webs down the center; leading the webs over a folding device which folds the assembled webs over longitudinally into a book-like multiple web; past a cross-folder which zigzags the web into form lengths reducing the whole to a package.

Willard discloses a method and apparatus for interleaving long continuous carbon strips between the folds of a longitudinally folded web. He feeds a web of paper upon which forms have been printed and down the center of which perforations have been made, over a guide roll and across arms which fold the web longitudinally along the perforations. Rolls of continuous carbon are positioned adjacent the path of the advancing folded web and strips of carbon are interleaved by approaching the web at right angles and turning over angularly positioned guide bars between the folds to align the carbon strips between the folds in the direction of the paper web. The folded and interleaved web is wound on a drum. It is later taken off the drum and passed through a perforating machine where the web is perforated transversely and folded zigzag fashion into a pack.

Lawson is concerned with making manifolding books with separate carbon sheets interleaved between sets of form sheets. He leads a flat web of paper, upon which forms have been printed, between rollers and over a folder and down between rollers. The carbon paper in a continuous strip is fed from a supply roll over a roller and around a diagonal roller so positioned that the carbon strip is associated with the web as it moves over the folder bar, and lies between the layers of the web as it emerges folded from the rollers adjacent the folder.

Hess describes an apparatus and method to perform in a single printing operation the crimping together of master and underlying hectograph carbon sheets, printing the top surface of the master sheet directly by the press while imprinting its under surface with a reverse impression so as to enable its use in a direct process duplicating method. From a stack of alternately interleaved white imprinted sheets and hectograph carbon sheets, sets of one each are picked up by a suction device, fed onto a tray and thence into the printing press. The sheets are crimped together at the edge, and the press prints directly upon the master sheet, transfer occurring to the reverse thereof when metallic type is used. The end product is a printed hectograph master set.

Foster is relied on by the Patent Office tribunals not for the invention disclosed therein, but for the description given by the patentee of prior art usages of the hectograph master sheets wherein each master sheet had a hectograph copying sheet attached to it with the inked side of the copying sheet lying against the lower surface of the master sheet. When the master sheet was given a positive impression by a printing press, a negative or reverse representation would be transferred by the copying sheet to the lower surface of the master sheet. The master forms would then be completed by typewriter or handwriting, the impressions made on the surface being transferred in reverse impression onto the under surface of the master sheet, thus providing for later duplication by means of a direct process duplicating method.

Lewis et al. teach the use of a sheet of protective material interleaved between and stapled to an upper and lower sheet, the inner surface of the former being coated with hectograph transfer material, the whole comprising a master set, the protective sheet of which protects the master from smudging and which is detachable along a perforated edge at the time of use.

Appellant's complete method disclosure consists in ten basic elements or steps. Certain of these comprise the subject matter of claims 1 and 6. The remaining claims add to that basic grouping certain of the remaining features of appellant's method. Those elements and the claims within which they are embraced are set out below in tabular form. Adjacent each entry is a notation to the particular patent or patents among the references in which pertinent art relative to that element is disclosed.

| Element | Description | Claim | Reference |
|---|---|---|---|
| 1. | A continuous web of paper; | 1, 6 | Lawson, Marchev, Cooper, Willard. |
| 2. | Half the width of which is coated with a transfer material; | 1, 6 | Marchev |
| 3. | Folded longitudinally so that one-half of the web as a face or master sheet is superimposed upon the coated half; | 1, 6 | Cooper, Willard, Lawson |
| 4. | Printed with a form by a press so that positive impressions are registered on the face of the advancing folded web while a reverse impression is imprinted on the under surface of that top sheet by the action of the transfer material on the sheet below, under the pressure of the hard type of the printing press: | 1, 6 | Cooper, Hess, Foster. |
| 5. | Interleaving a continuous strip of protective paper between the surfaces of the folded web; | 1, 6 | Willard, Lawson, Lewis et al. |
| 6. | Performing a second printing operation on the face of the advancing web, which printing is not imprinted by reverse impression by the transfer material beneath because of the protective sheet; | 2, 12 | |
| 7. | Punching marginal holes in the folded web for guide or other purposes; | 10, 11, 12 | Cooper |
| 8. | Making transverse perforations at form length intervals on the web; | 9, 12 | Willard |
| 9. | Zigzag folding the web into a stack; | 8, 9, 11, 12 | Cooper, Willard |
| 10. | Or in lieu of 8 and 9, cutting the web at form length intervals with a knife to make individual form sets. | 7 | Marchev. |

The Patent Office tribunals held that both Hess and Foster teach printing a master sheet while it is in contact with the coated surface of a hectograph carbon sheet to produce a reverse impression in hectograph ink on the back of the master sheet. In view of the teaching by Marchev, Cooper, Willard, and Lawson of preparing forms on continuous strips involving the processing of webs of paper folded over longitudinally; Marchev, of coating half of the web width with transfer material; the latter three disclosing the printing of forms upon the web; and Willard and Lawson teaching the interleaving of continuous strips (carbon) in the folded web, it was held that it would not be inventive to interleave a protective strip between the folds of a continuous folded web, one face of which bears hectograph carbon transfer material, where Lewis et al. are illustrative of the benefit of protective sheets in hectograph books, and that it was not inventive to adopt such a process for the production of hectograph form blanks.

The appellant admitted in his Request for Consideration to the Board of Appeals that separate steps of his method are old: coating one-half of the web with transfer material (Marchev); folding the continuous web longitudinally along the middle (Cooper, Lawson); printing on the face and reverse of a hectograph sheet (Foster, Hess); inserting a strip (carbon) between the folded web (Willard, Lawson); and perforating and punching the web, folding and collecting the strips (Cooper). He contends before us, however, that none of the references teach the steps of progressively printing the folded web "as specified," and progressively inserting a continuous protective strip between the folds. "As specified" is taken to mean printing on a folded web having a coating of hectograph transfer material on the lower surface so that the progressively printed froms on the face of the web are simultaneously imprinted by the pressure of the type in reverse impression in hectograph ink on the back side of the master or top sheet.

Appellant distinguishes the patents cited against his claims in his very able brief by pointing out differences in specific detail of each patent considered separately in relation to his method. Thus he contends that the Board of Appeals erred in holding, after its analysis of the cited art, that "there was no invention in forming a hectograph form in continuous form as shown by the above references," because, appellant states, "the references fail completely to show such printed hectograph blanks or any possible continuous method of making them."

The Board of Appeals did not dispute that appellant may have been the first to devise a method of producing hectograph forms by processing a continuous strip or web of paper and transfer material with the concomitant incidents peculiar to the hectograph art of simultaneously printing a form in positive impression on the face of the master strip and imprinting in reverse impression on the back of the master strip the same form, and inserting a protective sheet to safeguard the continuous web or book from smudges, etc. Its position in general was that there is no invention in adapting to the production of hectograph forms well known methods of handling a continuous web of paper by progressively printing, longitudinally folding, inserting, perforating, and zigzag folding into a pack when all that is required in the adaptation is the observance of well known principles of the hectograph art of simultaneous positive and reverse printing where a hectograph carbon sheet lies against the back of the master surface, and the use of a protective sheet to protect the master surface from smudges, etc.

The appellant, however, insists that nothing in the art would even suggest that continuous strips of hectograph material could be used in the manner he discloses. He relies on In re Hofmann, 95 F.2d 257, 25 C.C.P.A., Patents, 975. There an applicant who provided for poisonous substances a container of conical or pyramidal shape so as to be difficult to grasp and hence put one who endeavored to pick it up on notice of its contents, was held entitled to a patent despite cited ink stand and bottle art. The Patent Office view was that it would be obvious to one having the idea of designing a bottle not readily liftable from its support-

ing surface to select forms and shapes suitable to that purpose. The court, in reversing the Patent Office there held, however, that applicant's creative concept should be considered in its entirety in order to determine *whether the solution of the problem before the applicant involved invention.*

 It seems to us that the appellant was confronted with a problem the solution of which was well known to the art of producing by continuous process manifold forms. The art showed the advantages of preparing printed forms integrated with reproductive media by using continuous webs of material. Once it occurred to him that it would be advantageous to produce hectograph forms by a continuous web process, he could turn to the art of producing manifold forms utilizing continuous paper webs and gather together all the techniques required to realize his objective. So assembled, there was no new mode of operation or any unexpected result. Indeed the results appellant achieves are those clearly suggested by the references to anyone interested in producing from a continuous web manifold forms of any character. True enough appellant in selecting the techniques familiar in the manifold form art assembled them skillfully with a view to the inherent properties of the material with which he was working. Thus, because of the unique feature of simultaneously printing and reverse imprinting on a master sheet lying against a hectograph carbon, the obvious thing to do in setting up his method was for the appellant not to print the forms on the web until after the longitudinal fold was made bringing the face or uncoated half of the web in superimposed relation to the hectograph coated half. Similarly, since the nature of hectograph forms re-

quired, as the art shows, a protective interleaf between the master form and the carbon, it was necessary to add to the continuous folded web an interleafed continuous protective sheet. The art shows clearly how to interleave in a manifold web one or more continuous sheets. Similarly, punching, perforating, zigzag folding, or cutting into form lengths a continuous manifold web in the manner practiced by appellant is well disclosed in the art. The concept of selecting hectograph forms for continuous process production of itself was not invention, as where the art is highly developed in handling various types of printed forms and reproductive media by such a process, it requires no "uncommon talent" to select hectograph form media for such treatment. The appellant is not entitled to claim patentability for his process merely because it is applied to different material than the prior art processes. In re Truslow, 104 F.2d 203, 26 C.C.P.A., Patents, 1292, and cases there cited; In re Shepherd, 172 F.2d 560, 36 C.C.P.A., Patents, 810. Once the selection was made, the art provided the suggestions needed to work out a suitable process. We have often held that where a number of references suggest doing what the applicant has done, there is no invention in carrying out those suggestions. In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939.[1] And we have held in the case of In re Kuhn et al., 150 F.2d 145, 32 C.C.P.A., Patents, 1110, that the rule of In re Hofmann, supra, is of no avail where the cited references individually or collectively suggest doing the thing that the applicant has done.

 For the reasons given, we conclude that all of the claims at bar are unpatentable over the references. The additional

1. In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823; In re Moore, 146 F.2d 1018, 32 C.C.P.A., Patents, 916; In re Dalzell, 152 F.2d 1013, 33 C.C.P.A., Patents, 808; In re Phipps, 154 F.2d 116, 33 C.C.P.A., Patents, 861; In re Burhans, 154 F.2d 690, 33 C.C.P.A., Patents, 998; In re Scherl, 156 F.2d 72, 33 C.C.P.A., Patents, 1193; In re Wharton, 156 F.2d 180, 33 C.C.P.A., Patents, 1198; In re Herthel, 156 F.2d 170, 33 C.C.P.A., Patents, 1202; In re Haney et al., 158 F.2d 296, 34 C.C.P.A., Patents, 767; In re McLaren, 158 F.2d 299, 34 C.C.P.A., Patents, 777; In re Teter, 158 F.2d 1007, 34 C.C.P.A., Patents, 797; In re Dryer, 162 F.2d 505, 34 C.C.P.A., Patents, 1186; In re Andreas, 164 F.2d 370, 35 C.C.P.A., Patents, 757; In re Casey, 165 F.2d 1019, 35 C.C.P.A., Patents, 869; In re Udy, 173 F.2d 230, 36 C.C.P.A., Patents, 911.

printing step of claims 2 and 12 is thought to be an obvious expedient where guide lines not to be hectograph-inked on the reverse side of the master sheet are desired on the face thereof. The decision appealed from is accordingly affirmed.

Affirmed.