38 C.C.P.A. (Patents)

## Application of KAMLET.

### Patent Appeal No. 5742.

United States Court of Customs and Patent Appeals.

Argued Nov. 9, 1950.

Decided Dec. 5, 1950.

Leonard L. Kalish, Philadelphia, Pa. for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel) for the Commissioner of Patents.

[Oral argument November 9, 1950, by Mr. Kalish and Mr. Schimmel]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting as unpatentable over the prior art claims 1 to 7 and 9, all the claims in appellant's application for a patent on a process for the "Manufacture of Alpha-Methylglycerine From Butadiene."

In accordance with the motion made by appellant's counsel at the oral argument, the appeal will be dismissed as to claim 9.

Claim 1 is considered illustrative and reads as follows:

"1. A process for the manufacture of alpha-methylglycerine which comprises reacting butadiene with a member of the group consisting of hydrogen chloride and hydrogen bromide, thereby to form an equilibrium mixture of 1-halobutene-2 and 2-halobutene-3, hydrolyzing said halobutene mixture to form an equilibrium mixture of alpha-methallyl alcohol and crotyl alcohol, reacting said alcohol mixture with hypochlorous acid to form a mixture of

alpha-methylglycerine monochlorhydrins, and hydrolyzing said mixture of monochlorhydrins to form alpha-methylglycerine."

The references relied on are: Essex et al. 1,626,398, Apr. 26, 1927; Meisenburg 1,725,156, Aug. 20, 1929; Pollack et al. 2,313,767, Mar. 16, 1943; Van de Griendt et al. 2,318,032, May 4, 1943.

Appellant's application comprises a process for the manufacture of alpha-methylglycerine using butadiene as the starting material and comprising four process steps, as follows:

(1) reacting butadiene with a member of the groups consisting of hydrogen chloride and hydrogen bromide to form a mixture of halobutenes;

(2) hydrolyzing the halobutenes formed in step (1) to form a mixture of alpha-methallyl alcohol and crotyl alcohol;

(3) reacting the alpha-methallyl alcohol and the crotyl alcohol mixture formed in step (2) with hypochlorous acid to form a mixture of monochlorhydrins, and

(4) hydrolyzing the mixture of monochlorhydrins to alpha-methylglycerine.

The Meisenburg patent discloses the hydrobromination of butadiene to 2-bromobutene-3 (crotyl bromide) by reacting butadiene-1, 3 with bromine in a glacial acetic acid solvent which is essentially the same as that described in appellant's application and which is step (1) above mentioned.

The patent to Pollack et al. discloses hydrolysis of halobutenes to form a mixture of alcohols which is essentially the same as that described in appellant's application and which is step (2) above mentioned.

The patent to Essex et al. discloses that allyl alcohol is added to a sodium hypochlorite solution to produce glycerine monochlorhydrin and that the monochlorhydrin so produced is hydrolyzed to glycerine, which is essentially the same as disclosed in appellant's application and which is shown in steps (3) and (4) above mentioned.

The patent to Van de Griendt et al. discloses hydrolysis of alpha-methyl glycerine monochlorhydrin which is essentially the same as appellant's step (4).

The Primary Examiner rejected claims 1–7 as lacking invention over Meisenburg in view of Pollack et al., Essex et al., and Van de Griendt et al., and also as being aggregative.

Appellant contends that the Meisenburg patent does not disclose the first step in appellant's application, and in his brief states: "Thus, *Meisenburg 1,725,156* does *not* disclose the formation of an *equilibrium mixture* of 1-halobutene-2 and 2-halobutene-3 (which characterizes the first step of applicant's claimed process) and, instead, Meisenburg's process results in production of only crotyl bromide." (Italics quoted.) However, the conditions of reaction of Meisenburg are essentially the same as disclosed in appellant's application, and if appellant obtains a mixture of halobutenes, the production of such a mixture is inherent in the Meisenburg process.

Appellant contends that the Pollack et al. patent "discloses the formation of *a single unsaturated alcohol from a single unsaturated halide,* whereas the second step of applicant's claimed process consists of the *simultaneous* formation of crotyl alcohol *and* alpha-methyllyl alcohol from an equilibrium *mixture* of 2-halobutene-3 *and* 1-halobutene-2. (Italics quoted.) Pollack et al., however, teach that unsaturated alcohols may be produced by hydrolyzing in an aqueous alkaline medium the halide corresponding to the alcohol desired, and they further state that "the invention may be applied to the treatment of halide mixtures containing allyl type halides." The patent clearly discloses that crotyl halide, allyl halide, and methallyl halide may be treated to form the corresponding alcohol.

Appellant contends that Essex et al. merely disclose the conversion of allyl alcohol to glycerine monochlorhydrin; that by appellant's process three specifically different monochlorhydrins are formed; also, that *"Van de Griendt et al.* does not teach the simultaneous (or other) conversion of the *three* monochlorhydrins to alpha-methylglycerine (which is the fourth step of

applicant's process) * * *." (Italics quoted.) Essex et al., however, teach that allyl alcohol is added to a sodium hypochlorite solution to produce glycerine monochlorhydrin and that the "monochlorhydrin produced is hydrolyzed to glycerine by boiling the product under a reflex condenser." That patent also teaches that the disclosed process will produce polyhydroxy compounds from compounds containing at least one pair of doubly bonded carbon atoms and an oxygen containing substituent. Van de Griendt et al., moreover, disclose the conversion of glycerine halohydrins to glycerine by hydrolysis in aqueous alkaline solutions and further teach that mixtures of halohydrins or polyhalides may be hydrolyzed, that it is unnecessary "that the halohydrins or the polyhalides be in a substantially pure state," and that crude solutions obtained from the manufacture of halohydrins may be used.

It is therefore thought that the four steps disclosed in appellant's application are sufficiently disclosed in the cited references.

In rejecting claims 1–7 as lacking invention over Meisenburg in view of Pollack et al., Essex et al., and Van de Griendt et al., the examiner stated: "Each of the claims sets forth steps (1), (2), (3) and (4) in sequence. * * * In each individual step the preparation of the feed material is inherent in the reference showing that step, and no invention is seen in starting with the same feed material for that step, such feed material being prepared by a method which is old in the reference disclosing the next preceding step. In other words, each reference in turn showing the claimed method of preparing the feed for the next succeeding step, no invention is seen in conducting these preparations methods or processes in sequence."

 It is, of course, well established that a new combination of old elements cooperating in a new, useful, and unobvious manner to produce an improved result is patentable. In re Moore, 181 F.2d 1014, 37 C.C.P.A., Patents, 1045, and cases there cited. But not all new combinations are patentable combinations. "Especially in chemical and electrical experiments happy solutions may be reached by testing out variants reached merely by permutations of old elements." Ruben Condenser Co. v. Copel and Refrigeration Corp., 2 Cir., 85 F.2d 537, 541, certiorari denied, 300 U.S. 665, 57 S.Ct. 508, 81 L.Ed. 873. Invention, it is true, may be required in combining features taken from disclosures of prior art patents so as to produce a useful result; it is equally well settled that there may be a rejection of claims based on a combination of several patents, taking specific features from each in making the rejection. In re Delancey, 177 F.2d 377, 37 C.C.P.A., Patents, 760. It is not necessary that a complete disclosure be contained in a single reference. In re Streckert, 167 F.2d 1010, 35 C.C.P.A., Patents, 1148; In re Horney, 161 F.2d 271, 34 C.C.P.A., Patents, 968; In re Milne, 140 F.2d 1003, 31 C.C.P.A., Patents, 918; Radtke Patents Corp. v. Coe, 74 U.S.App.D.C. 251, 262, 122 F.2d 937, 948, certiorari denied 314 U.S. 695, 62 S.Ct. 411, 86 L.Ed. 556. Where a number of references suggest doing what applicant has done, there is no invention in carrying out those suggestions. In re Brenn, 182 F.2d 187, 37 C.C.P.A. (Patents) 1086; In re Udy, 173 F.2d 230, 36 C.C.P.A., Patents, 911; In re Herthel, 156 F.2d 170, 33 C.C.P.A., Patents, 1202.

We are impressed by the following statement in the board's decision:

"It appears to us that reference to the prior art, as illustrated by the Van de Griendt et al. patent would lead the chemist seeking to produce alpha-methylglycerine to hydrolize the corresponding alpha-methylglycerine monochlorhydrin and that the patent to Essex would show him that the latter could be produced from a corresponding allyl alcohol by treatment with sodium hypochlorite. The patent to Pollack et al. teaches how to produce the allyl alcohols by hydrolysis of the corresponding chlorides and the patent to Meisenburg teaches the production of crotyl bromide from butadiene.

"To make the process complete the flow sheet could be further extended by including the prior art steps necessary for the production of butadiene and for the production of hypochlorous acid, which are

used in the claimed process of producing an alpha-methylglycerine. We do not find any invention in merely selecting the particular four steps claimed from among those of the complete process which would include the production of these materials not disclosed by applicant and this is confirmative of the correctness of the position taken by the Primary Examiner."

The end product of appellant's method is alpha-methylglycerine, which is old. Appellant has combined four steps in his process, each of which steps is old.

Appellant's process does not produce new, useful, and unobvious results but rather only that which would be obvious and wholly within the skill of the art, and does not denote invention.

From what has been said, it is apparent that the decision of the board should be sustained, and it is therefore unnecessary to discuss other questions presented.

The appeal is dismissed as to claim 9, and the decision of the Board of Appeals as to claims 1 to 7 is affirmed.

Affirmed.