34 C.C.P.A. (Patents)

#### Application of HORNEY.
#### Patent Appeal No. 5240.

Court of Customs and Patent Appeals.

May 13, 1947.

Richey & Watts, of Cleveland, Ohio (B. D. Watts, of Cleveland, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D.C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

All four of the claims, Nos. 1, 3, 4 and 5, in appellant's application for a patent relating to a process for the production of cyclopropane were rejected by the Primary Examiner of the United States Patent Office and the examiner's decision was affirmed by the Board of Appeals. From the board's decision appellant appeals here.

Claim 1 is a generic claim and reads as follows:

"1. The method of making hydrocarbons having the general formula $C_nH_{2n}$ which includes the steps of treating a substituted alkane containing three or more carbon atoms and two different halogens selected from the group consisting of chlorine, bromine and iodine by mixing such alkane with zinc dust in suspension in a medium

consisting of water while maintaining said medium at a temperature between about 70°C. and about the boiling point of said medium, and collecting the resulting hydrocarbon of the formula $C_nH_{2n}$."

The references relied upon are:

Hass et al., 2,235,679, March 18, 1941.

Gustavson, Jour. fur Praktische Chemie, Vol. 144, New Series Vol. 36, pp. 300–303. Published in 1887.

Domanitzki, Chemisches Zentralblatt, Vol. 2, page 313, Berlin, 1916.

Claim 1 was rejected as not defining invention over Hass et al. in view of Gustavson. Claim 1, together with claims 3 and 4, was also rejected as lacking invention over Gustavson in view of Domanitzki. Other grounds of rejection were made which we need not consider here. Claim 5 was rejected as not reading upon the elected species in the absence of an allowable generic claim; in view of our conclusion herein it is not necessary to further consider this claim.

Claims 3 and 4 are narrower than claim 1 in that they are limited to the use of 1–bromo–3–chloropropane as the starting material.

Gustavson discloses the making of cyclopropane by the following reaction:

in claims 3 and 4 as 1–bromo–3–chloropropane and the use of water as the suspension medium for the zinc dust.

"The patent to Hass et al discloses a method for making cyclopropane wherein a substituted alkane containing three carbon atoms and two different halogens of the group defined in claim 1 is treated with zinc dust, but in a suspension medium comprising ethyl alcohol instead of water.

"The publication to Gustavson discloses a similar reaction in which trimethylene bromide is treated similarly in a process such as disclosed by Haas et al. Gustavson also discloses that instead of alcohol, pure water may be used for the reaction. It is stated that where pure water is used the reaction begins at 80° and although it proceeds somewhat more slowly than when 75% alcohol is used, still it is just as lively as if 98% were employed. In each case it is stated that about one liter of gas is obtained from ten grams trimethylene bromide.

\*　　\*　　\*　　\*　　\*　　\*

"The patent [sic] to Domanitzki has also been cited as disclosing the conversion of 1–bromo–3–chloropropane to cyclopropane by reduction, but in this reference magnesium is the reducing agent instead of zinc and ether is used instead of alcohol or water as a reaction medium."

BrCH₂CH₂CH₂Br–Zn ⟶ ZnBr₂–H₂C────CH₂

Trimethylene bromide　　　　　　　cyclopropane

In this reaction the zinc is in the form of a powder and may be dispersed in either alcohol *or water*.

Gustavson's starting material is slightly different from that used by appellant, but Domanitzki discloses the same starting material.

The board pointed out the important features of the appealed claims in the following statement and therein also stated, and we think properly, the pertinent portions of the disclosures of the references:

"The principal features of the claims reside in the use of a substituted alkane containing three or more carbon atoms and two different halogens specifically defined

Appellant, with commendable thoroughness and clarity, has described the nature of the gas which his process produces, in the language presently quoted, and states what we think is the real crux of the case. We quote from appellant's brief:

"Cyclopropane is a gas at atmospheric pressure and temperature and possesses certain properties which make it suitable for use as an anaesthetic. Since its safety factor is small, it must be free from contaminants which would lower its safety factor and make it dangerous to use on human beings. The contaminants which are most likely to be present in it are propane, propene, propylene and hydrogen. Naturally any satisfactory process for producing

cyclopropane must yield a pure product at a cost which makes it competitive with other anaesthetics. The present process produces satisfactory cyclopropane and has been used commercially and extensively for that purpose.

"This invention may be understood sufficiently for present purposes from a brief description of one modification of the process which is set out in Claim 3. 1-bromo-3-chloropropane is introduced slowly into a water medium which contains zinc dust in suspension. The reaction mixture is maintained at a temperature between about 90°C. and 98°C. The gases generated by this treatment are passed thru a condenser and are then collected and purified. The cyclopropane made in this manner is suitable for use as an anaesthetic for human beings, and is competitive with other anaesthetics as has been proven by its extensive production and use.

"During the prosecution of the application the Examiner cited several prior patents and publications but, in his Statement on Appeal, relied on only one patent and two publications. He rejected the claims on the patent to Haas in view of the publication of Gustavson and also on Gustavson in view of the publication of Domanitzki. *He did not find any anticipation of the claims by any of the citations taken singly or jointly; he merely held that the claims lacked invention over the citations on the ground that it would be obvious to change the processes of the citations so as to obtain the claimed process. He admitted that such changes would require experimentation."* [Italics quoted.]

It will be observed that the Patent Office tribunals rejected the appealed claims upon the ground that, in view of the prior art, appellant's claims defined no invention. It was not held that any single reference, or even a combination of the references, disclosed appellant's process; but in view of the clear suggestions of the art as to the starting material and in using water instead of alcohol his process was held to be lacking in invention even though a marked improvement in the product was brought about. If no one in the cited prior art had suggested the use of water and no one in this art had suggested appellant's starting material the situation as to patentability might be different.

The Gustavson publication discloses a method of making cyclopropane (tri-methylene), in which process he reacts trimethylene bromide with zinc powder in alcohol *or water*. This publication contains the statement, "Further I have discovered that instead of spirits of wine pure water may be used."

Appellant argues at great length that his process has brought success out of notorious failure and that the prior art suggests that the old processes of making the instant hydrocarbons, responding to the general formula, $C_nH_{2n}$ (n being any number), were not satisfactory insofar as they contained many impurities which handicapped their use as an anaesthetic for human beings. We think the record fairly supports appellant's contention in this regard and obviously (and this is not disputed by the Patent Office tribunals) appellant has contributed much to the art.

However, let us assume that appellant, by his method, has, in a sense, brought commercial success out of what had theretofore been a commercial failure. The sole question remains, was this accomplishment the result of invention?

While this court has always tried to be liberal in resolving doubts in favor of patent applicants, we have also always tried to guard the field which should be left open, without patent monopoly handicaps, for the exercise of the skill of those engaged in the art. We think this is a clear instance where the prior art so clearly suggests doing what appellant has done that appellant has merely followed such teachings and, by experimentation, has brought about a useful improvement. We think he has been able to do so without exercising inventive genius.

In order to properly reject patent claims in the Patent Office it is not necessary that there be cited a single reference anticipating the claimed invention, or a combination of references which shows all the elements of the claims. It, in cases like this, becomes merely a question of opinion as to whether or not, in view of the cited art and the suggestions therein contained,

274

it required anything more than the skill of the artisan to bring about the claimed results.

Appellant has cited many correct principles of law which he argues apply to the instant case. We are familiar with those decisions and the principles to which our attention has been called, but we are of the opinion that those principles are not controlling here. For instance, appellant argues that "success cannot be anticipated by failure." Of course this depends upon the circumstances in the case. He also cites cases where claims have been held not to have been anticipated by earlier disclosures which merely showed starting points and the applicant, by further experimentation, had brought about success. The further experimentation that would entitle one to a patent under circumstances like the instant one must be such as is not suggested to those skilled in the art.

In the present instance we think everything appellant has done, regardless of how much commercial success he has achieved by his efforts, is within the skill of the art.

We might at this point further say that the instant case involves highly technical chemical questions upon which the presumed experts of the tribunals of the Patent Office below have concurred. We have not been convinced that they have erred in rejecting the appealed claims.

For the reasons stated, the decision of the board should be, and is, affirmed.

Affirmed.