40 C.C.P.A.(Patents)

## Application of HULTQUIST.
### Patent Appeal No. 5946.

United States Court of Customs
and Patent Appeals.
April 15, 1953.

Ellis S. Middleton, Stamford, Conn. (Robert W. Kell and Robert Ames Norton, Stamford, Conn., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting claims 2 to 5, the only remaining claims in appellant's application for a patent on a "Process of Preparing 2-Aminopyrimidine and Intermediates Therefor."

The appealed claims relate to the second step of an allegedly improved two-step process of making "2-amino pyrimidine," a chemical used commercially in the synthesis of "2-sulfanilamido pyrimidine," one of the sulfa drugs. The first step of the process comprises the production of 1, 1, 3, 3-tetraalkoxypropane by a reaction involving the addition of a vinyl alkyl ether with an orthoformate ester. In the second step, the 1, 1, 3, 3-tetraalkoxypropane $[(RO)_2CH-CH_2CH(OR)_2]^1$ is then condensed with a salt of guanidine $[(NH_2)_2C(:NH)]$ in a strongly acid medium. Alcohols corresponding to the particular alkoxy groups used are obtained as by-products of the reaction. The two steps may be carried out separately, or in a single reaction medium, and a single reaction vessel.

---

1. Wherein R is the symbol for an alkyl radical.

Appealed claims 4 and 5 were rejected by the examiner as drawn to a non-elected species. That rejection has not been challenged by appellant and is not covered in his reasons of appeal. Hence, that question is not before the court.

Claims 2 and 3 read as follows:

"2. A method of producing 2-aminopyrimidine which comprises reacting a 1, 1, 3, 3-tetraalkoxypropane with a guanidine salt in strongly acid medium.

"3. A method of producing 2-aminopyrimidine which comprises reacting a 1, 1, 3, 3-tetraethoxypropane with a guanidine salt in strongly acid medium."

Claim 2 is generic to claim 3 in that in the former the reactant is any 1, 1, 3, 3-tetraalkoxypropane, while claim 3 specifically recites the tetraethoxypropane. It appears from appellant's specification that the particular alkyoxy group present is not critical, and the essential issue is the same with respect to both claims.

The references relied on by the Patent Office are: Moos et al. 2,375,735 May 8, 1945; Hartmann et al. 2,435,002 Jan. 27, 1948.

The patent to Moos et al. discloses a process for the preparation of 2-amino pyrimidine by condensing an alkoxyacrolein acetal, preferably beta-ethoxyacrolein diethyl acetal $[E_tO-CH=CH-CH(OE_t)_2]$,[2] with a salt of guanidine $[(NH)_2C(:NH)]$ in a strongly acid medium. Moos et al. state that an alcohol is liberated during the condensation, and that since the alcohol does not appear to affect the reaction it is not important that any specific alkoxyacrolein acetal be employed. The reference indicates that the desired 2-aminopyrimidine product is an intermediate for the preparation of 2-sulfanilamido pyrimidine.

The patent to Hartmann et al. discloses a process for preparing sulfonamido derivatives of pyrimidine by reacting benzenesulphonyl-guanidines containing an amino group, e. g., para-aminobenzenesulfonylguanidine with compounds having two carbonyl groups united by a methylene radical.

Various groups of such compounds containing this dicarbonyl structure are enumerated, as well as specific compounds falling within those groups. Among those compounds listed are 1, 3-dialdehydes and their derivatives such as their acetals. According to the reference, the reaction may be carried out in the presence of mineral acids.

The examiner rejected the appealed claims as unpatentable over Hartmann et al. holding that the disclosure therein of acetals 1, 3-dialdehydes clearly indicated and contemplated to one skilled in the art the use of the diacetal 1, 1, 3, 3-tetraalkoxypropane used by appellant; that the only difference between the reaction claimed and that of Hartmann was the use of 2-substituted aminopyrimidine instead of 2-aminopyrimidine; and that it would be apparent to those skilled in the art, and not inventive, to use guanidine *per se* instead of substituted guanidine, if 2-aminopyrimidine was the product desired instead of 2-substituted aminopyrimidine. The board affirmed the examiner, explaining in detail why it and the examiner considered that Hartmann et al.'s reference to acetals contemplated appellant's reactant, 1, 1, 3, 3-tetraalkoxypropane. The board interpreted the reference to acetals in Hartmann et al. as meaning acetals of the various dicarbonyl compound groups disclosed, including acetals of the 1, 3-dialdehydes, and stated:

"* * * The only compounds properly designated acetals of 1, 3-dialdehydes would be the dialkoxy and the tetraalkoxy forms. The 1, 1, 3, 3-tetraalkoxypropane referred to in the claims on appeal is a tetraalkoxy acetal of the simplest possible 1, 3-dialdehyde, namely, malonyl aldehyde."

The board also affirmed the examiner's rejection of the claims as unpatentable over the process disclosed by Moos et al. The examiner stated that he considered the Moos. et al. reference to be "extremely close art" because the process disclosed therein differed from that here claimed only by the use of appellant's 1, 1, 3, 3-tetraalkoxypropane, which is a diacetal,

2. Wherein E is the symbol for the alkyl radical derived from ethyl alcohol.

instead of the alkoxyacrolein acetal used by Moos et al.

The process disclosed by Moos et al. appears to us to be identical with that here claimed except for the type of acetal used in the reaction with the guanidine salt. Indeed, appellant apparently concedes this. However, appellant contends that Moos et al. teaches the use of an unsaturated acetal rather than a saturated acetal, with a double bond being required between carbon 1 and carbon 2 of the acetal; that closure of the pyrimidine ring requires a further step when a saturated acetal is used; and that appellant has therefore gone a step beyond the Moos et al. patent so that his process is patentably distinct over that of the reference.

The question is not merely whether appellant's process is different from the Moos et al. process, but whether it is *patentably* different. Novelty and utility alone are not sufficient to impart patentability to a claim. Invention must be present. In re Hass, 141 F.2d 122, 31 C.C.P.A., Patents, 895.

The patent to Moos et al. states that a good yield of 2-amino pyrimidine may be obtained from the condensation of guanidine with an alkoxyacrolein acetal, and appellant does not challenge this. Further, there is no evidence in this case that the use of the particular acetal claimed, 1, 1, 3, 3-tetraalkoxypropane, achieves any unobvious or unexpected superior results. In our opinion, appellant has merely carried forward the teaching of Moos et al. That reference discloses all the essentials of appellant's process, and we think the use of other similar acetals in the same reaction would be a matter of experiment and within the realm of performance of one skilled in the art (particularly in view of Hartmann et al.'s disclosure of the use of acetals in a very similar process for preparing a similar end product). Something beyond the skill of the art is required if invention is to be said to exist. Dow Chemical Co. v. Coe, 76 App.D.C. 317, 132 F.2d 577.

In view of the foregoing, we are of the opinion that the appealed claims were properly rejected as unpatentable over the patent to Moos et al. Having reached this conclusion, it is unnecessary for us to further discuss the rejection based on the patent to Hartmann et al.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.