**Application of Ralph N. LULEK.**
**Patent Appeal No. 6809.**

United States Court of Customs
and Patent Appeals.
July 25, 1962.

Francis W. Guay, Old Greenwich, Conn. (William P. Spielman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH and SMITH, Associate Judges, and Judge WILLIAM H. KIRK-PATRICK.*

SMITH, Judge.

Applicant appeals from a decision of the Board of Appeals which affirmed the final rejection of claims 13, 16, 17, 18 and 19 of applicant's Application for Patent, Ser. No. 351,049, filed April 24, 1953 for "Antiseptic Soap".

The issue here is whether a germicidal, detergent soap containing the known antibiotic neomycin in the proportions stated in the appealed claims is patentable. The rejection under 35 U. S.C. § 103 is predicated on the obviousness of incorporating neomycin with such a soap. Appellant asserts that the new and unexpected results achieved by his germicidal soap composition is evidence that the incorporation of neomycin with such a soap is not obvious.

Claim 13 is illustrative. It reads as follows:

"13. A germicidal, detergent soap composition comprising a detergent, water-soluble soap and from 0.01% to 10.0% by weight of neomycin based on the weight of said soap and calculated as neomycin base."

Claim 16 differs from claim 13 in specifying an "alkali metal soap selected from the class consisting of sodium and potassium soaps, said composition containing from 0.03% to 5.0% of neomycin."

Claim 17 calls for the composition of claim 16 in which the soap is claimed as "a liquid soap composition containing the alkali metal soap and neomycin dissolved in water, said liquid soap composition containing at least 0.0015% of neomycin."

Claim 18 differs from claim 13 in calling for "neomycin sulfate and tirethanolamine [sic] dissolved in water, said liquid soap composition containing 0.051% by weight of neomycin calculated as neomycin base and about 15% of said detergent soap dissolved therein."

Claim 19 differs from the other claims in calling for a "bland, non-germicidal soap" to which is added the sole germicidal agent, "from 0.03% to about 5% of neomycin."

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

The references relied upon are:

Craige et al.   2,484,784   Oct. 11, 1949

The Merck Index; Merck and Co., Inc., N.J., 6th edition, (1952), page 667

Journal of the American Medical Association, volume 148, No. 5, February 2, 1952, pages 339 to 343, "Use of Neomycin in Dermatology" by Kile et al.

Craige et al. disclose a bactericidal synergistic mixture of tyrothricin and 2-2'-dihydroxy-5-5'-dichlorodiphenylmethane which may be incorporated "with solid or semi-solid substances; such as soaps, ointments, vanishing creams and similar compositions for topical use." The patentees prefer to use from about 0.0001 to 5% of tyrothricin in most of their compositions.

The Merck Index states that neomycin is an antibiotic "Proposed for TB and certain mixed infections". It recites certain of its properties such as water solubility.

The J.A.M.A. article states that neomycin is "a valuable antibiotic for topical therapy." The effectiveness of this antibiotic is shown by the columns headed "Marked Improvement" and "Improvement" in Tables 1, 2 and 4, for a wide variety of skin complaints, the majority of which are of bacterial origin.

Appellant's position as stated in his brief is:

"The patentability of the instant invention is predicated upon the discovery that neomycin in the presence of soap and water manifests exceptional and entirely unobvious properties. Neomycin is a water-soluble antibiotic, yet in very small concentrations in a detergent soap it exhibits the much sought after and very desirable property known as 'substantivity'. In other words, water does not flush it off the skin; on the contrary, neomycin provides a continuing germicidal action which becomes more effective the longer the soap is used.

"In addition, it was by no means obvious to the person skilled in the art that neomycin would prove compatible with soap; that it would not impart a color or an odor to soap; and that only very small concentrations of neomycin in the detergent soap and water would have any effect whatsoever, let alone manifest substantivity."

The gist of the board's rejection as stated in its opinion appears to be:

"The fact that the precise action of neomycin in soap may not have been predictable is of little significance where its trial merely amounted to an obvious extension of the teaching of the art. In re Horney, 34 CCPA 968, 1947 C.D. 302, 603 O.G. 181, 161 F.2d 271, 73 USPQ 293; In re Hultquist, 40 CCPA 927, 1953 C.D. 241, 674 O.G. 1101, 203 F.2d 758, 97 USPQ 328. Furthermore, even assuming the substitution produces superior results, the innovation is not patentable when it is reasonably taught by the prior art. In re Krogman, 42 CCPA 1037, 1955 C.D. 349, 700 O.G. 784, 223 F.2d 497, 106 USPQ 276."

Appellant takes issue with the decision of the board, first by differing as to how far the Craige et al. reference went in teaching the art to use an antibiotic in a germicidal soap and second, by urging that the Abbey affidavit is entitled to greater weight on the issue of unobviousness of the neomycin addition to the soap than was given it by the board.

Appellant's position as to the Craige et al. reference is stated in his brief as follows:

"The Craige et al. reference does not in any way teach or suggest enhancing the cleansing action of soap and water by first incorporating the antibiotic in soap. Of course, this Court recognizes that the very small concentration of neomycin added to the detergent soap is present in even small[er] concentrations when washing with water.

"There is no concept whatsoever in Craige et al. of soap and water

cleansing. The patentees are dealing exclusively with pharmaceutical compositions useful for topical application to certain parts of the body of man. This would not suggest to the person skilled in the art that neomycin, a water-soluble antibiotic, might be efficacious when added to soap and water. At best, Craige et al. suggests that neomycin, combined with 2,2'-dihydroxy-5,5'-dichlorodiphenylmethane, might be an effective germicide when admixed with, say, an ointment for topical use."

We think this statement overlooks the obvious fact that Craige et al. in disclosing the concept of adding a synergistic mixture of an antibiotic, namely, tyrothricin, and a germicide to solid or semi-solid substances, one of which is referred to as "soaps" for topical use, also teaches one skilled in the art that an antibiotic may be added to a germicidal soap. In our opinion, the disclosures of Craige et al. would not be limited by one skilled in the art to synergistic mixtures of a germicide and an antibiotic, particularly where, as here, the antibiotic alone has a sufficient germicidal effect. We also reject appellant's argument that Craige et al. is not pertinent because of asserted differences between the antibiotics, tyrothricin and neomycin. In this connection, we agree with the succinct statement of the board in its decision of February 27, 1961 on appellant's Petition for Reconsideration:

"In the case before us it is not necessary in order to sustain the rejection that there be a close relationship between tyrothricin and neomycin. It is sufficient that both are known to be topical antibiotics."

■ Resolution of the legal issue of patentability under 35 U.S.C. 103 requires us to consider what would be factually obvious to one of ordinary skill in the art. Factual data in the form of affidavits is of assistance in making this determination. We think such affidavits should, as here, be given careful consideration. However, after so considering the Abbey affidavit, we agree with the board, that:

"* * * The Abbey affidavit is not conclusive of the proposition sought to be established because of the extremely low concentrations of tyrothricin employed. Since antibiotics usually differ in potency the effective concentration of one does not ordinarily coincide with that of any other antibiotics. Since tyrothricin is not a particularly potent antibiotic as measured by current standards, it would, if used alone, be employed in concentrations higher than those in the tests reported in the affidavit. It will also be noted that Craige et al. specify concentrations of tyrothricin as high as 5%, yet the highest concentration tested by appellant was less than .05%. All that this affidavit establishes is that neomycin is a more potent antibiotic than tyrothricin which we believe is already well known in the art. * * *"

■ The Merck Index and the Journal of the American Medical Association references are ample to provide one of ordinary skill in this art with technical data as to the properties of neomycin, including its water solubility and its uses in dermatology, including its incorporation and testing in a water-miscible base. As previously stated, we think Craige et al. teach one skilled in this art the use of soaps as a carrier for an antibiotic for topical use.

Appellant also argues it would not be expected by one of ordinary skill in this art, knowing neomycin to be water-soluble, that it would be "substantive" to the skin in the presence of soap and water. Appellant's brief states this argument as follows:

"Notwithstanding the requirements of 35 U.S.C. 103, the Board, it is respectfully submitted, disregarded the entirely unobvious fact that neomycin is substantive to the skin in spite of the fact that it is

water-soluble. The table in Appellant's specification (R 8) provides conclusive proof of this very desirable and unpredictable property."

We have examined the table to which reference is made in the above quoted passage but do not find it convincing as proof of "substantivity". The most we can derive from the table is that neomycin in the soap tested was effective in the amounts used in reducing the skin flora over the period of time of the tests. The table does not show any comparison of neomycin with other antibiotics, such as tyrothricin, as to this property of increased effectiveness of the germicidal function of the soaps. The test shown in the table compares neomycin with 2,2'-methylenebis-(3,4,6-trichlorophenol). It is against this background that the specification states:

"* * * The fact that the effect of neomycin increases the longer it is used is important. The neomycin soap can be used continuously and be effective. Where the effect of a germicidal soap decreases as time passes, the soap may become sufficiently ineffective to fail to meet the requirements. Why there is lessening in effect of germicidal soaps is not known for certain but apparently the bacteria either become immune or resistant strains develop. When neomycin is used in the preferred amount, the amount that will reduce the bacteria count by at least 70 to 75% after one week, the neomycin soap becomes more effective the longer it is used and there is no indication that resistant or immune strains of bacteria develop."

We think this position was correctly answered by the board in its opinion of February 27, 1961 where it stated:

"* * * The step that appellant took was, in our opinion, merely one that would logically flow from the teachings of the prior art, i. e., the use of a later discovered and more potent antibiotic in place of an older less potent antibiotic in the same relationship (together with soap on the skin). From the very nature of neomycin, it would seem logical to expect better results. * * *"

While appellant's brief stresses the "substantivity of neomycin, we are unable to find in the specification anything other than an assumption as to the existence of this effect and an inference[1] that the results of the *Cade* tests were due to adherence of the neomycin on the skin.

The Abbey affidavit establishes that a soap containing neomycin (as base) in an amount of 0.00495% killed the test bacteria "on contact (10 sec)", thus, it seems to us that the greater concentration of neomycin base in the test evaluations set forth in the table in the specification even when diluted with soap and water could also kill the skin flora bacteria on contact.

Be that as it may, the references show the properties of neomycin in dermatological tests both in oil bases and in water-miscible bases. To the extent that its germicidal properties are related to its "substantivity", in spite of its water-soluble properties, it seems to us this relationship is as well established by the prior art teachings as it is by anything in appellant's specification and test data.

We therefore agree with the examiner and the board that the soap disclosed by appellant and claimed in the appealed claims is not patentable. Despite the asserted unpredictability of the results achieved as urged by appellant, we think the substitution of the antibiotic neomycin for the antibiotic tyrothricin in the soaps disclosed by Craige et al. would have been obvious to one of ordinary skill in this art at the time of appellant's invention in view of the disclosures in the Merck Index and in the Journal of

1. The specification states at one point: "It is not known whether the compound does actually adhere to the skin." Later, however, it states "the neomycin does apparently adhere to the skin."

the American Medical Association as to the properties of neomycin and its use in various carriers in topical applications. Under these circumstances, the grant of a patent thereon is prohibited by 35 U.S.C. § 103.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

MARTIN, Judge, did not sit or participate because of illness.