**Application of William E. McCAULEY.**

**Patent Appeal No. 7565.**

United States Court of Customs
and Patent Appeals.

March 10, 1966.

Arthur B. Bakalar, Frank R. LaFontaine, Emeryville, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.\*

SMITH, Judge.

The issue presented is whether certain chemical compositions and methods of using the same, as defined in the appealed claims,[1] would be obvious within the meaning of 35 U.S.C. § 103.

The appealed claims define the. subject matter of this appeal as follows:

    7. The solid composition comprising p-dichlorobenzene and dimethyl 2,2-dischlorovinyl [sic, dichlorovinyl] phosphate, the weight of said phosphate being from about 0.10 percent to about 20 percent of the weight of the dichlorobenzene.

    9. The solid composition comprising naphthalene and dimethyl 2,2-dichlorovinyl phosphate, the weight of said phosphate being from about 0.10 percent to about 20 percent of the weight of the naphthalene.

    27. The method for the control of insects which comprises subjecting an insect to the vapor generated by the composition of claim 7, said composition being substantially at room temperature.

    28. The method for the control of insects which comprises subjecting an insect to the vapor generated by the composition of claim 9, said composition being substantially at room temperature.

From the foregoing it is seen that the composition claims 7 and 9 each define a solid composition which includes DDVP.[2] Claim 7 calls for DDVP and p-dichlorobenzene in certain proportions. Claim 9 defines a solid composition comprising DDVP in a stated proportion of

---

1. In application Ser. No. 117,666, filed June 16, 1961 for "Insecticide Formulations."

2. Appellant states that the common designation of dimethyl 2,2–dichlorovinyl phosphate is DDVP and it will be so designated hereinafter.

naphthalene. Methods for controlling insects by the use of the composition defined in claims 7 and 9 are claimed in dependent claims 27 and 28, respectively.

The references relied on are as follows:

Snyder et al. [Snyder] 3,098,703 July 23, 1963

Fuller 1,845,977 Feb. 16, 1932

Hanna, Handbook of Agricultural Chemicals (2d ed. 1958)

Ihndris & Sullivan, *Laboratory Fumigation Tests of Organic Compounds*, 51 J. of Economic Entomology 638, 639 (1958)

---

The appealed claims were considered together and were rejected in view of two combinations of the above references: (1) Snyder in view of Ihndris, and (2) Hanna in view of Fuller.[3]

In view of appellant's position as to the allowability of the appealed claims, the teachings of the references need not be explored individually nor at great depth. Naphthalene and para-dichlorobenzene are disclosed as possessing fumigant insecticidal properties as well as being a fumigant per se. (Fuller, Hanna, and Snyder). Insecticidal properties are shown for lindane (Ihndris and Snyder) and DDVP (Hanna and Ihndris). Fairly construed by one of ordinary skill in this art, the teachings of record establish that the use of DDVP, para-dichlorobenzene, naphthalene and lindane for their fumigant and insecticidal properties is old in the art. Compositions resulting from combining naphthalene, para-dichlorobenzene and lindane with other fumigants are also old in the art (Fuller and Snyder). The claimed compositions produced by combining DDVP and naphthalene, and DDVP and para-dichlorobenzene are admittedly new.

Appellant argues that the claimed combinations are unobvious because of additional teachings which show that DDVP, unformulated, has certain inherent properties which render it unsatisfactory for general use as an insecticide. Appellant lists three such properties of DDVP which, it is maintained, would make it unobvious to one of ordinary skill in the art to combine DDVP with known fumigants. These properties are discussed in appellant's brief under the heading "DDVP, Unformulated, Has Drawbacks" and may be summarized as follows:

1. *Toxicity.* Appellant points out that DDVP is very toxic to man and animals. This requires stringent precautions to prevent injury to persons handling it and/or applying it.

2. *Reactivity.* As appellant points out, DDVP reacts with moisture, including water vapor in air, and with oxygen in air. DDVP so reacted is ineffective as an insecticide.

3. *Volatility.* DDVP, unformulated, is said by appellant to be so volatile under ordinary conditions that it presents problems of safe handling and application because of the toxicity of its vapors.

Appellant cites the specification as filed and an article[4] in support of his position.

Considering the National Pest Control article, we do not find after examining

---

3. The parties agree that the claims stand rejected solely in view of 35 U.S.C. § 103, notwithstanding the board's reliance on 35 U.S.C. § 102 at one point in its decision.

4. National Pest Control Association, Technical Release, November 9, 1959, "Current Status of DDVP".

the record that this article was before the Patent Office. In view of the highly technical nature of the subject matter there discussed, we decline to take judicial notice of it and hold that since the article was not before the Patent Office, it cannot be here relied upon as support for appellant's argument.

Appellant cites the following single portion of the specification in support of his position:

A variety of organic phosphates have demonstrated their usefulness as vapor-phase insecticides. Exemplary of such phosphates are the neutral esters of beta-halogen-substituted alpha,beta-olefinically unsaturated alcohols with acids of pentavalent phosphors, e. g., dimethyl 2,2-dichlorovinyl phosphate, commercially known as DDVP. Other suitable insecticides of this type are the halogenated derivatives of these vinyl phosphates, of which the compound dimethyl 2,2-dichloro-1,2-dibromoethyl phosphate is representative.

These compounds are in general volatile liquids at or about room temperature. Because of the volatility of these liquids under conditions of use, they present handling and application difficulties. Furthermore, under moist conditions, the phosphates tend to hydrolyze to products of reduced insecticidal effectiveness.

However, an examination of the entire specification reveals portions which indicate some question as to the significance of the problems on which appellant's arguments are here based. Concerning a composition of the general type defined in claim 7, we find the specification states:

The phosphate may be incorporated in the carbocyclic substrate by any desired method. For example, when incorporating DDVP in p-dichlorobenzene, the p-dichlorobenzene may be melted and the desired amount of DDVP thoroughly mixed with it by stirring. Alternatively, flakes of p-dichlorobenzene containing the DDVP may be prepared by spray-drying a solution of both components in a volatile solvent. Other conventional methods are equally suitable.

As to the composition in claim 9, the specification provides:

Naphthalene-dimethyl 2,2-dichlorovinyl phosphate compositions having the noted compositions were prepared by melting the noted amounts of naphthalene and dissolving in it the desired amount of phosphate.
* * *

We emphasize at this point that the above portions of the specification are not utilized as prior art under the terms of 35 U.S.C. § 103 but are referred to as being apparently inconsistent with the basis asserted for appellant's principal argument here.

Appellant had the right to submit prior art teachings such as the Sprinkle et al. patent No. 3,097,128 and other evidence to the examiner for showing that the known materials would not combine, and to have these teachings and evidence considered on the issue of obviousness raised under 35 U.S.C. § 103. The examiner was not impressed by this showing and reiterated the position in his answer on remand that:

* * * Ihndris teaches the insecticidal properties of DDVP and teaches that the action of DDVP is faster than that of lindane, another halogen fumigant insecticide. The substitution of the faster-acting DDVP for lindane as the agent having general insecticidal properties can be seen as no more than an obvious expedient to the artisan.
* * *

Appellant has pointed out no reason why one of ordinary skill in this art would not expect lindane and DDVP to be released analogously by para-dichlorobenzene or naphthalene. It is apparent that the release of the active insecticide is substantially the same in both cases. As stated in appellant's specification " * * * the evaporation of the latter [DDVP] from the surface of the solid composition is determined by the evap-

oration of the former [the carbocyclic substrate]." This appears to be the same release mechanism as relied upon for lindane in the combination disclosed in Snyder et al. The fact that DDVP is a liquid at room temperature while lindane is a solid does not avoid the conclusion that the combination would be obvious.

Thus, the present record does not support appellant's position on the issue as here presented in his brief. Instead, the single issue which we find to be presented by the record is whether the claimed composition resulting from combining a known insecticide with a known fumigant, absent any evidence that such a combination is unobvious, is patentable in view of the prohibition set forth in 35 U.S.C. § 103.

■ The proper test is whether, to one skilled in the art, the references together make obvious within the stated conditions of 35 U.S.C. § 103 what appellant has done. In re Rosselet et al., 347 F.2d 847, 52 CCPA 1533; In re Reynaud, 331 F.2d 625, 51 CCPA 1310; In re Marvin, 222 F.2d 271, 42 CCPA 883; In re Milne, 140 F.2d 1003, 31 CCPA 918.

■ Considering the prior art teachings of record, on which we have briefly commented, the compositions as defined in appealed claims 7 and 9 would be obvious to one of ordinary skill in the art.

The prior art clearly teaches the method of controlling insects as claimed in claims 27 and 28 except for the use of the particular combination of insecticidal ingredients claimed in claims 7 and 9 which we have found to be obvious under 35 U.S.C. § 103. The use of an obvious material in an old method for accomplishing an old result is not patentable. 35 U.S.C. § 103.

We therefore think the board was correct in finding:

* * * it would be obvious to the skilled insecticidal chemist to substitute for lindane, in the Snyder et al. combination of insecticides to be employed against house flies, DDVP, a

newer insecticide, taught by Ihndris et al. to be more effective than lindane when tested against house flies. In re Adams et al., 48 CCPA 746, 1961 C.D. 148, 769 O.G. 770, 284 F.(2d) 525, 128 USPQ 116, In re Huellmantel, 801 O.G. 890, 324 F. (2d) 998, 139 USPQ 436, and In re Lulek, 49 CCPA 1324, 1962 C.D. 586, 785 O.G. 17, 305 F.(2d) 864, 134 USPQ 352. * * *

The decision of the board is therefore affirmed.

Affirmed.